## STILLWELL AND BIERCE MANUFACTURING COMPANY *v.* PHELPS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WISCONSIN.

No. 209. Argued March 18, 1889. — Decided April 15, 1889.

When, under a contract to furnish, and to put in complete operation in the purchaser's mill, machinery of a certain description and quality, for a price payable partly upon the arrival of the machinery at the mill and partly after the completion of the work, the machinery furnished and set up does not, when tested, comply with the requirements of the contract, the purchaser, upon giving notice to the seller that, if the latter does not "put the mill in repair so that it will do good work," the former will do so, is entitled to deduct, in an action for the unpaid part of the price, the reasonable cost of altering the construction and setting of the machinery so as to conform to the contract.

Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial; and his decision of it is conclusive, unless clearly shown to be erroneous in matter of law.

THIS was an action by an Ohio corporation against a citizen of Delavan in the State of Wisconsin, upon a contract in writing, by which the plaintiff agreed " to furnish and put in complete operation for the second party, in his flouring mill at Delavan aforesaid, one first-class seventy-five barrel capacity roller-mill complete," including certain machinery specified; "the first party to use all machinery, belting, etc., etc., now in said flouring mill that is in proper condition for use, except what is now in use on the rye and feed side of said mill; all of said mill, machinery, fixtures and apparatus to be new and first-class in every way and of latest pattern, except as above specified, and to be completed and put in complete running order within ninety days from the date hereof;" and the defendant agreed to pay the plaintiff " for the said mill, fixtures, etc., complete as above specified, and put in complete operation in his flouring mill at Delavan aforesaid," the sum of $9000, as follows: $3000 "upon the arrival of said mill and machinery at his mill in Delavan," $4000 "when said mill is completed and in running order to the satisfaction of the second party," and the remaining $2000 "within ninety days after the completion of the said mill as aforesaid, the first party to start the mill and see that it is in complete running order."

The complaint alleged the plaintiff's performance of the contract on its part, the defendant's payment of $3272.47, and his refusal to pay the balance of $5727.53, which the plaintiff sought to recover, with interest. The defendant in his answer set up by way of defence, and also under a counter-claim for $11,000, delay on the part of the plaintiff, and defects in the manufacture and design of the machinery furnished, whereby the defendant had been put to great expense to complete it so as to comply with the requirements of the contract, and had been deprived of the use of his flouring mill and injured in his business. The plaintiff filed a replication, denying all the allegations in the counter-claim.

At the trial, the plaintiff introduced evidence tending to show that the machinery was put in the defendant's flouring mill in compliance with the terms of the contract, except for a delay of several weeks, in part chargeable to the defendant's

fault, and was tested in February, 1884, with satisfactory results.

On the question of the damages to which the defendant was entitled for the delay, the plaintiff called as a witness one Geissner, who testified that he was the owner and manager of a roller flouring mill of about seventy-five to one hundred barrels capacity in an adjoining county, and was personally familiar with roller mills and the milling business; but had never seen the defendant's mill, or been in Delavan, and knew nothing from personal observation or knowledge of the extent of the custom work of the mill, its business, or product, or of the water-power.

He was then asked to state the rental value of the mill in question, in his judgment, during the period in question. The question was objected to, "because the witness had never seen and had no personal knowledge of the property in question, and was therefore incompetent to testify as to rental value." The court sustained the objection, and the plaintiff excepted to the ruling.

The witness was then asked to state such rental value, "upon the supposition that the said mill had a good water-power and all the business it could attend to, as claimed by the defendant, and a capacity of manufacturing seventy-five barrels per day." To this question the same objection was made, and sustained by the court, and the plaintiff excepted as before.

The defendant then introduced evidence tending to show that the machinery and work furnished by the plaintiff did not comply with the contract, and did not and could not operate satisfactorily, and that his flouring mill with the machinery constructed and placed therein by the plaintiff did not and would not do as good work as other roller mills of like capacity; that it was necessary, in order to put it in condition to do such work, to expend the sum of $2772, including $1100 for the cost of new machinery; and that the defendant did this after his attorneys had served upon the plaintiff's attorney, and the plaintiff had neglected to comply with, a notice in these words: "If your clients do not within ten days

proceed to put the mill in repair so that it will do good work, Mr. Phelps will employ the best millwrights he can obtain and put the mill in order and charge the expense to your clients."

The court, at the plaintiff's request, gave to the jury the following instructions: "The plaintiff was entitled to a fair test of the machinery put into the defendant's mill, and nothing short of that would justify its condemnation. Such a test requires an ample power to operate the machinery to the best advantage; and this means the whole of the machinery, if the jury find that the machinery was designed and intended to be operated together. It also contemplates competent management by a miller who thoroughly understood such machinery and was able to manipulate and handle it so as to secure the best results of which it was capable."

The court also instructed the jury as follows: "If the plaintiff broke this contract by failing to furnish the defendant such a mill as it was bound to furnish, then the defendant had the right to give the plaintiff notice that it was required to remedy the defects, and on its failure to do so the defendant could then proceed and correct the defects himself, so that the mill should be such as he was entitled to have under the contract, and charge the reasonable and necessary expenses of the work to the plaintiff. The limit to which the defendant could go in that direction is this: He would have the right to make the mill completely answer the demands of the contract, and nothing more, that is, a first-class complete roller mill of the designated capacity, capable of doing as good work as other first-class roller mills of similar grade and capacity would do on the same kind of stock. He would only have the right to incur and make the plaintiff chargeable with such expenses as were reasonable and necessary to put the mill in that condition. If the system put into the defendant's mill could have been perfected by alterations in matters of detail so as to make it first-class, complete, capable of doing the work contemplated by the contract, then the additional work on the mill should have been limited to such alterations; but if it could not be thus perfected without more radical changes and additions, then the defendant had the right to proceed so far

as actual necessity required, making the expense of the work as moderate and reasonable as the circumstances permitted."

The plaintiff excepted to this portion of the instructions, for the reason that "the same authorizes the jury to allow the defendant, and to deduct from the claim of the plaintiff, as a part of the expense of changing the mill over so as to make it conform to the contract, the cost of the new machinery put into the mill, amounting to $1100."

The jury returned a verdict by which "they find the issue herein in favor of the defendant, but that the defendant is not entitled to recover damages against the plaintiff in excess of the plaintiff's claim against the defendant." Judgment was rendered on the verdict, and the plaintiff sued out this writ of error.

*Mr. G. W. Hazleton* for plaintiff in error.

I. Under contracts of the description of that in dispute in this case, where the thing furnished is to be satisfactory to the purchasing party and he neglects to return or to offer to return it, but takes it into possession and uses it either in the shape in which it is, or for the purpose of making it over into something different, he thereby obligates himself to pay for it at the contract price, and is not at liberty to recoup the cost of such reconstruction in an action for the price. *McCarren* v. *McNulty*, 7 Gray, 139; *Brown* v. *Foster*, 113 Mass. 136; *Wood Reaping Machine Co.* v. *Smith*, 50 Mich. 565; *Hallidie* v. *Sutter Street Railroad*, 63 California, 575; *Hoffman* v. *Gallaher*, 6 Daly, 42; *Singerly* v. *Thayer*, 108 Penn. St. 291; *Silsby Manuf. Co.* v. *Chico*, 24 Fed. Rep. 893; *McClure* v. *Briggs*, 58 Vermont, 82; *Balt. & Ohio Railroad* v. *Brydon*, 65 Maryland, 198; *McCormick Machine Co.* v. *Chesrown*, 33 Minnesota, 32; *Gray* v. *Central Railroad of New Jersey*, 11 Hun, 70.

The defendant being under no legal duty to accept the machinery, which could be enforced, — in other words, having the power to accept or reject, — the case stands as if the plaintiff in error had left with the defendant an article at a given

price to examine and test subject to approval. *Witherby* v. *Sleeper*, 101 Mass. 138; *Fairfield* v. *Madison Manufacturing Co.*, 38 Wisconsin, 346; *Dewey* v. *Erie Borough*, 14 Penn. St. 211; *S. C.* 53 Am. Dec. 533; *Spickler* v. *Marsh*, 36 Maryland, 222; *Prairie Farmer Co.* v. *Taylor*, 69 Illinois, 440.

II. But if it be held that the contract in this case is subject to a different rule from that laid down in the cases already cited, in other words, that these cases do not state the law, then we claim that the doctrine invoked by the defendant ought not to be applied to this case: 1st. Because the notice served does not convey any intimation of such expenditures as were charged: 2d. Because such alleged damages were manifestly not within the contemplation of the parties: 3d. Because the rule invoked by the defendant is not the proper test and measure of damages in such case. *White* v. *Brockway*, 40 Michigan, 209; *Merrill* v. *Nightingale*, 39 Wisconsin, 250; *Boothby* v. *Scales*, 27 Wisconsin, 626; *Bonnell* v. *Jacobs*, 36 Wisconsin, 59.

III. It has long been the settled doctrine of the State of Wisconsin that a party may return or offer to return an article which does not comply with the terms of the warranty, and recover back what he has paid. *Woodle* v. *Whitney*, 23 Wisconsin, 55.

IV. A question is raised as to the admissibility of Geissner's testimony to show the rental value of the mill. The plaintiff in error submits that this evidence ought not to have been excluded. *Butler* v. *Mehrling*, 15 Illinois, 488; *Alfonso* v. *United States*, 2 Story, 421; *Sturgis* v. *Knapp*, 33 Vermont, 486; *Whitbeck* v. *N. Y. Central Railroad Co.*, 36 Barb. 644; *Whitney* v. *Thatcher*, 117 Mass. 523; *Cliquot's Champagne*, 3 Wall. 114.

*Mr. John T. Fish*, for defendant in error, cited: *Snyder* v. *Western Union Railroad Co.*, 25 Wisconsin, 60; *Clark* v. *Baird*, 9 N. Y. (5 Selden) 183; *Teerpenning* v. *Corn Exchange Insurance Co.*, 43 N. Y. 278; *Lincoln* v. *Saratoga & Schenectady Railroad*, 23 Wend. 425; *Brill* v. *Flagler*, 23 Wend. 354; *Norman* v. *Wells*, 17 Wend. 136; *Lamoure* v. *Caryl*, 4 Denio,

370; *Transportation Line* v. *Hope*, 95 U. S. 297; *Stone* v. *Covell*, 29 Michigan, 359; *Clark* v. *Rockland Water Power Co.*, 52 Maine, 68; *Westlake* v. *St. Lawrence Ins. Co.*, 14 Barb. 206; *Tucker* v. *Mass. Central Railroad Co.*, 118 Mass. 546; *Pennsylvania Company* v. *Roy*, 102 U. S. 451.

Mr. Justice Gray, after stating the case as above reported, delivered the opinion of the court.

The principal position taken in the argument for the plaintiff is that the defendant, having received and retained the machinery furnished under the contract sued on, was bound to pay the contract price; and in support of this position cases were cited, holding that under a contract to manufacture or to furnish a chattel satisfactory to the purchaser, the purchaser, if he takes possession of and uses it, thereby conclusively accepts it as satisfactory, and binds himself to pay the whole contract price.

Considering the instructions given at the plaintiff's own request, and the grounds on which the plaintiff excepted to the other instructions of the court, it is, to say the least, doubtful whether this point is open. But, assuming it to be open, it clearly cannot be sustained, and the cases cited are inapplicable.

The plaintiff's agreement was not for a sale of the machinery, subject to a condition that it should be satisfactory to the purchaser. But it was an agreement, not only to furnish machinery of a certain description and quality, but also to set it up and put it in complete operation in the defendant's mill. The machinery was to be erected on the defendant's land and made part of his mill; and one instalment of the price was to be paid on the delivery of the machinery there, and before the plaintiff had completed the work to the satisfaction of the defendant. In such a case, it would be most unreasonable to compel the defendant, in order to entitle him to avoid paying the whole contract price, or to recover damages for the plaintiff's breach of contract, to undergo the expense of taking out the machinery, and the prolonged interruption of his business

during the time requisite to obtain new machinery elsewhere. The rule of damages, adopted by the court below, of deducting from the contract price the reasonable cost of altering the construction and setting of the machinery so as to make it conform to the contract, is the only one that would do full and exact justice to both parties, and is in accordance with the decisions upon similar contracts. *Benjamin* v. *Hillard*, 23 How. 149; *Railroad Co.* v. *Smith*, 21 Wall. 255; *Marsh* v. *McPherson*, 105 U. S. 709, 717; *Cutler* v. *Close*, 5 Car. & P. 337; *Thornton* v. *Place*, 1 Mood. & Rob. 218; *Allen* v. *Cameron*, 3 Tyrwh. 907; *S. C.* 1 Cr. & M. 832.

The notice given by the defendant to the plaintiff "to put the mill in repair so as to do good work" was sufficient to cover all alterations necessary to accomplish that end.

No error is shown in the exclusion of Geissner's testimony as to the rental value of a mill which he had never seen and knew nothing of. Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial; and his decision of it is conclusive, unless clearly shown to be erroneous in matter of law. *Perkins* v. *Stickney*, 132 Mass. 217, and cases cited; *Sorg* v. *First German Congregation*, 63 Penn. St. 156.

*Judgment affirmed.*