## UNITED STATES v. PERCANSKY.

(District Court, D. Minnesota, Fourth Division. December 31, 1923.)[1]

1. **Criminal law ⊚≈178—Substituted information for one nolled does not put defendant twice in jeopardy.**
   The filing of a second information, where a prior information for the same offense was nolled is not subject to the objection that it puts defendant twice in jeopardy.

2. **Criminal law ⊚≈481, 1153(2)—Ruling on qualification of expert within discretion of court.**
   Whether or not a witness is shown to be qualified as an expert is a preliminary question, addressed to the sound discretion of the court, and its ruling is not reviewable, unless a clear case of abuse of discretion is shown.

3. **Criminal law ⊚≈696(5)—Striking out responsive answer of witness to question not objected to discretionary.**
   When a question is not objected to, and the answer is strictly responsive, whether or not the answer will be stricken out rests in the discretion of the court.

4. **Criminal law ⊚≈304(20), 862—Court will take judicial notice that whisky is intoxicating and fit for beverage purposes.**
   That whisky is intoxicating and fit for beverage purposes is a matter of common knowledge, of which courts and juries will take judicial notice.

5. **Criminal law ⊚≈1129(2)—Assignment of error must set out evidence admitted or rejected.**
   Rule 11 of the Circuit Courts of Appeals, which requires an assignment of error to the admission or rejection of evidence to quote the full substance of the evidence admitted or rejected, must be observed.

6. **Criminal law ⊚≈1036(8), 1044—Assignment of error held to raise no question for review.**
   An assignment of error that the verdict is without the support of any evidence does not raise any question for review by the appellate court, where there was no motion for a directed verdict, nor exception taken to the charge.

7. **Criminal law ⊚≈1072—Grounds for refusal of writ of error.**
   Where it is apparent that there is no merit in any of the assignments of error, that they are plainly and palpably frivolous, and that the proceeding was resorted to for the postponement of service of the sentence imposed by the court, the trial judge should refuse to allow a writ of error and supersedeas.

---

[1] Writ of error allowed January 17, 1924.

Criminal prosecution by the United States against Morris Percansky. Judgment of conviction. On petition by defendant for writ of error and supersedeas. Denied.

Leland W. Scott, Asst. U. S. Atty., of St. Paul, Minn.
Erling Swenson, of Minneapolis, Minn., for defendant.

McGEE, District Judge. The information in this case charges the defendant with two violations of the National Prohibition Act, both alleged to have taken place at the residence of the defendant at No. 600 Eighth Avenue North, in the city of Minneapolis, state and district of Minnesota, on the 24th and 29th days of January, 1923. The defendant interposed a plea of not guilty. The case was tried on November 28, 1923, and resulted in a verdict of guilty on both counts.

Thereafter the defendant was sentenced to imprisonment in the county jail of Becker county, Minn., for 5 months and 25 days on each count. A bill of exceptions has been allowed and settled. A motion for a new trial was made and denied December 3, 1923. The matter is now before me on a petition for the allowance of a writ of error and supersedeas.

It is rather difficult to take the assignments of error, 12 in number, seriously, or to resist the conclusion that the writ of error and supersedeas are sought for the purpose of delaying the time when the defendant shall begin to serve the terms of imprisonment imposed upon him by the judgment in this case. The evidence on behalf of the government is to the effect that a prohibition agent named Sunde and an informant went to the defendant's residence on the 24th day of January, 1923, and were met at the door by the defendant, and by him shown into the kitchen; that the defendant left the kitchen through the back door, and in three or four minutes returned with three bottles of liquid, from one of which he served the agent and his companion with two drinks each, for which he collected from the agent 50 cents per drink, and sold to the agent the other two pints of liquid, for which he received $2 per pint.

One of the pint bottles was taken by Sunde to the government chemist, and in some manner was lost. The agent, without objection on the part of defendant's counsel, testified that the two bottles he so purchased contained white moonshine whisky. He also testified that he drank similar liquid 25 or 30 times before the 24th of January, 1923; that he was familiar with the taste of moonshine whisky and alcohol and whisky; that he knew what it was he drank, and that it was moonshine whisky.

To this point there was no objection to the testimony of Sunde. To the question whether the witness could tell whether there was as much as one-half of 1 per cent. or more of alcohol by volume in the two drinks that he drank, there was an objection that it was incompetent, because there was no proper foundation laid. The question was not answered at that time, but the witness did say what he drank was whisky or alcohol, "what they call moonshine whisky," and that it contained alcohol. Then against objection the witness testified it con-

tained a great deal more than one-half of 1 per cent. of alcohol. He also testified that he tasted the contents of one of the bottles purchased by him, and that it tasted just the same as that served in the glass, and it was moonshine whisky.

The witness also testified that with the same companion he returned to the defendant's residence on the 29th of January, 1923, and was again escorted by the defendant into the kitchen; that the defendant left by way of the back kitchen door, and returned in a few minutes with a porcelain kettle from which he served two rounds of drinks to the defendant and his companion; and that the defendant also at the same time filled a bottle from the kettle and delivered it to the agent, receiving 50 cents per drink for each drink and $2 for the bottle. That bottle is Exhibit A, and it is the undisputed testimony of the government chemist that it contains 53 per cent. alcohol by volume, is white moonshine whisky, and is fit for beverage purposes.

As the two drinks were served, and the bottle, Exhibit A, filled from the same vessel, namely, the porcelain kettle, at the same time, the liquid must have been identical in each case, and therefore was, under the undisputed testimony of the chemist, moonshine whisky, with an alcoholic content of 53 per cent. by volume.

[1] Turning now to the assignments of error, the first assignment is that:

"The court erred in denying defendant's motion, made at the beginning of the trial, to quash or dismiss the second count alleged in the information, which charged the illegal sale of intoxicating liquor on January 29, 1923, on the ground that said count had been previously nolled, and that defendant was twice put in jeopardy for the same offense."

This assignment of error rests upon the unsupported statement of counsel that the second count "had been previously nolled." There is no support in the record for that statement, and if it had been nolled it does not follow that a second information could not be filed correcting, for instance, defects in the first information, without laying the foundation for the defense of former jeopardy. This assignment of error fails to call attention, as is required by rule 11 of the Circuit Court of Appeals, to the part of the record in which support for the statements contained therein can be found.

[2] The second assignment of error is that:

"The court erred in overruling defendant's objection to the following question propounded by the district attorney: 'Now, I ask you whether or not you can tell there was as much as one-half of 1 per cent. or more of alcohol by volume in that drink?' (Page 11 of transcript in settled case.)"

It will be noted that the question called for an answer of "Yes" or "No," and it was to the question in that form that the objection was made. The witness did not answer "Yes" or "No," but did make an answer that was not responsive to the question, namely:

"It contained a great deal more than one-half of 1 per cent. of alcohol."

There was no motion to strike out the answer on the ground that it was not responsive to the question or upon any ground. The question attempted to be raised by the objection of counsel went to the

competency of the evidence, which would depend upon the question of the qualifications of the witness Sunde as an expert to testify to the alcoholic content of moonshine whisky, based upon his experience as to which he testified at length.

The same point is sought to be raised by the third assignment of error. The question whether or not a sufficient foundation had been laid for the testimony of the witness Sunde as to the alcoholic content of the liquid, and as to whether it was or was not moonshine whisky, is one that rests in the sound discretion of the trial court, and it is not reviewable, except where there is shown a clear case of abuse of discretion. Spring Co. v. Edgar, 99 U. S. 645, 658, 25 L. Ed. 487; Stillwell Co. v. Phelps, 130 U. S. 520, 527, 9 Sup. Ct. 601, 32 L. Ed. 1035; Montana Ry. Co. v. Warren, 137 U. S. 348, 353, 11 Sup. Ct. 96, 34 L. Ed. 681; Inland Co. v. Tolson, 139 U. S. 551, 559, 11 Sup. Ct. 653, 35 L. Ed. 270. In Spring Co. v. Edgar, supra, at page 658, it is said:

"Whether a witness is shown to be qualified or not as an expert is a preliminary question, to be determined in the first place by the court; and the rule is that, if the court admits the testimony, then it is for the jury to decide whether any, and, if any, what, weight is to be given to the testimony. Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous. D. & C. Steam Towboat Co. v. Starrs, 69 Pa. St. 30; Page v. Parker, 40 N. H. 48; Tucker v. Massachusetts Central Railroad, 118 Mass. 546."

In Stillwell Co. v. Phelps, supra, it is said:

"Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial; and his decision of it is conclusive, unless clearly shown to be erroneous in matter of law. Perkins v. Stickney, 132 Mass. 217, and cases cited; Sorg v. First German Congregation, 63 Penn. St. 156."

In Montana Ry. Co. v. Warren, supra, it is said:

"It is difficult to lay down any exact rule in respect to the amount of knowledge a witness must possess, and the determination of this matter rests largely in the discretion of the trial judge. Stillwell Manufacturing Co. v. Phelps, 130 U. S. 520; Lawrence v. Boston, 119 Mass. 126; Chandler v. Jamaica Pond Aqueduct Corporation, 125 Mass. 544."

See, also, United States v. Fischer (D. C.) 245 Fed. 477.

It might be added with reference to the second assignment of error that the record shows that there was no objection to the question, "What was in the bottle when you got it?" The answer was strictly responsive, viz., "Moonshine whisky."

[3] After the witness answered, counsel moved to strike out the answer as incompetent, irrelevant, and immaterial, upon the ground that no foundation was laid. It is to the ruling of the court denying his motion to strike that counsel has preserved an exception. It is elementary that, when a question is not objected to and the answer is strictly responsive, whether the answer will be stricken out or not is a matter that rests in the discretion of the court. Aside from the elementary rule of law stated, the record discloses that the witness Sunde

was by experience qualified to express an opinion on the matters as to which he was interrogated.

[4] It was unnecessary to prove that the whisky bought was intoxicating or fit for beverage purposes, because that is a matter of common knowledge of which courts and juries will take judicial notice without proof. On this point see U. S. v. Golden, 1 Fed. (2d) ——. As to the liquor purchased from the defendant on July 29, 1923, by the undisputed testimony of the government chemist, it was shown to have been white moonshine whisky with an alcoholic content of 53 per cent. and fit for beverage purposes.

[5] The fourth assignment of error is that:

"The court erred in not sustaining the objection of defendant's counsel to the question propounded by the district attorney to defendant, viz.: 'You have some moonshine whisky at your place?' (Page 36 of transcript of settled case.)"

In this, as in all of the defendant's assignments of error, there is a violation of rule 11, which makes it necessary for the trial judge in the first instance, and, if a writ of error is allowed, the appellate court, to go into the record to discover what actually took place. A page of the Federal Reporter would be required to contain a list of the cases in the Circuit Court of Appeals of the Eighth Circuit explaining the purpose of rule 11 and enforcing the same. In Walton v. Wild Goose Mining & Trading Co. (C. C. A. 9) 123 Fed. 209, 211, 60 C. C. A. 155, 157 it is said:

"The Circuit Courts of Appeals have repeatedly called the attention of counsel to the absolute necessity of adhering strictly to the terms of rule 11 * * * concerning 'assignments of errors.' * * * The object of the rules is to so present the matter raised by the assignment of error that this court may understand what the question is it is called upon to decide *without going beyond the assignment itself*, and also that the party excepting may be confined to the objection taken at the time, which must then have been stated specifically. The party complaining of the action of the lower court must lay his finger upon the point of objection, and must stand or fall upon the case he made in the court below. Appellate courts are not the proper forum to discuss new points. They are simply courts of review to determine whether the rulings of the court below, as presented, were correct or not. Van Gunden v. Virginia Coal & Iron Co. (C. C. A. 4) 52 Fed. 838, 840; City of Lincoln v. Street Light Co. (C. C. A. 8) 59 Fed. 756; Lincoln Savings Bank & Saving Deposit Co. v. Allen (C. C. A. 8) 82 Fed. 148; City of Anniston v. Safe Deposit & Trust Company (C. C. A. 5) 85 Fed. 356."

See Frame v. Portland Gold Mining Co. (C. C. A. 8) 108 Fed. 750, 47 C. C. A. 664; Simpson v. First Nat. Bk. of Denver (C. C. A. 8) 129 Fed. 257, 63 C. C. A. 371.

If rule 11 had been complied with, and the assignment of error had set out the answer to the question, as it should have done, it would have disclosed this record:

"Q. You know what moonshine is, don't you? A. Yes.
"Q. You know, you say what? A. I see a bottle of moonshine.
"Q. You know what moonshine whisky is, don't you? A. How?
"Q. You know what moonshine whisky is, don't you? A. Yes.
"Q. You have some out there at your place? A. No.
"Q. What? A. No.
"Mr. Swenson: I object to that as immaterial, incompetent, and irrelevant; immaterial whether he has or hasn't."

It thus appears from the record that the witness answered the question in the negative, and that there was no objection to the question until after it had been answered twice, and that there was no ruling made, nor exception taken.

The fifth assignment of error is that:

"The court erred in confining said question to the whole month of January, 1923, and also in allowing said question, regardless of the time to which it was confined. (Page 36, settled case.)"

Again, it will be noticed that there is no attempt whatever in this assignment of error to conform to the requirements of rule 11, by setting out so much of the record as is necessary to present the question. The page of the record referred to is 36, and a reference to that page will show that there was no objection made, nor exception taken.

The sixth assignment of error is that:

"The court erred in overruling defendant's objection to a similar question. 'Did you have any out there in January of this year, any moonshine whisky?' (Pages 36 and 37 of settled case.)"

Again, the court is forced to turn to the record to find out what took place, and it discloses that the defendant was under cross-examination; that he had denied on direct examination absolutely that he sold the prohibition agent named, any moonshine whisky, and was being cross-examined on that point, namely, as to whether on either January 24, or January 29, 1923, he made the sales charged in the information. He admitted on cross-examination that he saw a bottle of moonshine, that he knew what moonshine was, but denied that he had any at his place except some for his own use.

The court required the United States attorney to confine his examination to a point of time around January, 1923, and the objection, to the overruling of which exception was taken, as counsel states, went to the form of the question only. If anything prejudicial to the rights of the defendant took place, the burden is upon him to lay his finger upon it and point it out; but no attempt has been made to do so.

The seventh assignment of error is that:

"The court erred in overruling the objection counsel for defendant made to the question, 'Well, you are on trial here charged with a crime. Now, have you ever been in court before?' (Page 38 of settled case.)"

Again, the testimony in the bill of exceptions has to be resorted to to discover the condition of the record, and it is disclosed by resorting to the record that the district attorney was asking the defendant a very proper question on cross-examination, namely:

"Q. Have you ever been convicted of a crime?

"Mr. Swenson: Just a minute. that is all right.

"Q. Your attorney says you can answer that. Have you ever been convicted of a crime? A. I do not understand.

"Q. You don't understand me. Do you know what a crime is? Do you know what I mean? A. No.

"Q. Well, you are on trial here charged with a crime. Now, have you ever been in court before?

"Mr. Swenson: Now, just a minute. I object to that as not a proper question, and immaterial.

"Q. The Court: Well, of course, if the witness understood the English language sufficiently, the court would restrict it to the usual question, and that goes, of course, just to his credibility.

"Mr. Swenson: Of course, a man may be in court for many different things.

"The Court: It is just introductory, and I presume the next question will be,—he doesn't know what the word crime means, so there must be some limit. (Objection overruled.)

"Mr. Swenson: Exception.

"Q. Will you answer Mr. Percansky? A. I don't know.

"Q. Well, have you ever been in court before? A. Yes, I was here.

"Q. What? A. Here.

"Q. In any court, have you ever been in any court before? A. I don't know.

"Q. You what? A. I don't know.

"Q. You don't know what a court is? A. Here.

"Q. Here? A. Here.

"Q. Do you know what a court room is? A. Here is a court.

"Q. Do you know what a charge is? A. Here is a court. I was here; I was in this court here.

"Q. In this court? A. Yes.

"Q. When? A. I was last—day before yesterday.

"Q. Yes, I suppose you have been here since October 16th. Have you ever been in any other court than this one?

"Mr. Swenson: I do not think that is material, and I renew the objection.

"The Court: If it is leading up to the question whether he was convicted or not, it does not make any difference.

"Mr. Swenson: I would like to ask the court if he will explain to the witness the difference between a crime and a misdemeanor.

"The Court: Both are crimes.

"Mr. Swenson: Well, not in regard to this question. I presume he is questioning this man for the purpose of impeaching him as a witness.

"The Court: No; just as affecting his credibility.

"Mr. Swenson: That is what I mean, yes; but, if he shows that or any misdemeanor, that wouldn't affect his credibility, I believe.

"Mr. Scott: Well, do you know anything about it? Maybe you can help me. He seems to rely upon you to answer.

"Q. Mr. Percansky? A. Yes.

"Mr. Scott: Are you going to object?

"Q. Haven't you been in court before, this court, charged with a violation of the liquor laws, of selling liquor? A. Yes, here; I was here.

"Q. Yes, I understand you perfectly. Weren't you directly charged with selling liquor in the municipal court here in this city? A. Here; I was in this court.

"Mr. Scott: That is all; that is all; goodbye.

"The Court: Step aside. (Witness excused.)"

The testimony above quoted also covers the ninth and tenth assignments of error, and only reinforces the conviction entertained that the assignments of error are all frivolous, and that the purpose of this proceeding is to gain time, and to postpone as far as possible the time when the defendant shall begin to serve the terms of imprisonment imposed upon him.

This is further reinforced by the eleventh assignment of error, which is as follows:

"The court erred in making the following statement in his charge to the jury, which statement was no part of the case and was highly prejudicial to defendant. Said statement is as follows: 'Your foreman will sign your verdict, and with him you will return it into court, and no other case will be taken up before Friday, so that this will be the last case until Friday. I am telling you this, so that, if there are some of you who are going home to-night, you can govern yourselves accordingly. Swear a bailiff.'"

The day on which this statement was made was the day before Thanksgiving, and members of the jury had been anxiously inquiring whether they would be allowed to go home that night, so as to be at their homes on Thanksgiving, and the information imparted to them was for the purpose of indicating that no other case would be taken up until the day after Thanksgiving, and that they could go to their homes when the pending case was disposed of.

There was no suggestion at the time by counsel that the language had any ulterior meaning or purpose, nor is it suggested now that there is any respect in which the statement was not a perfectly proper one to make; that is, why the information contained in the statement should not have been imparted to the jury. There was no objection made to it, nor exception taken.

[6] The twelfth assignment of error is along the same lines as its predecessors, namely, that the verdict was not what it ought to have been, that it was "unauthorized by the evidence, was contrary to the law and evidence, and wholly without support of any evidence; the verdict which the jury should have rendered was not guilty." A reference to the record will show that there was no motion at the close of the testimony for an instructed verdict, nor was there any exception taken to the charge.

Due to the fact that the calendar of the Circuit Court of Appeals is congested, resort to writs of error in prohibition cases is apparently becoming very attractive, because of the time that elapses from the issuance of the writ and granting of the supersedeas until the case is reached and finally disposed of in that court, which on the average is hardly less than one year.

[7] There are two courses that may be followed in applications like the one now under consideration: The first is for the trial judge to allow the writ of error and supersedeas as a matter of course, which, while it may involve a failure to properly discharge his duty as a judge, will relieve him of much irksome labor, and the other course is to examine the record, with which he is familiar, and, if he is of the opinion that no question is presented by the record for the consideration of the appellate court, and that, under its opinions and those of the Supreme Court of the United States, an affirmance will follow as a matter of course, he should deny the writ and refuse the supersedeas.

The second course, in my opinion, should be followed where it is apparent, as it is in the case under consideration, that there is absolutely no merit in any of the assignments of error; that they are plainly and palpably frivolous, and the proceeding one resorted to for the purpose of gaining time and postponing to the latest date possible the service of the terms of imprisonment imposed by the judgment of the court. To allow writs of error and supersedeas in cases like the one under consideration is to lend support to the charge that the courts are responsible for failure to promptly enforce the laws, and therefore are responsible for the crime wave that is now passing over the country, so far as it is due to a failure to promptly enforce the laws. The situation was well stated recently by Mr. Justice McReynolds in Moore v. Dempsey, 261 U. S. 86, 93, 101, 43 Sup. Ct. 265, 267 (67 L. Ed. 543), in these words:

"The delays incident to enforcement of our criminal laws have become a national scandal and give serious alarm to those who observe. * * * The recent execution of assassins in England within 30 days of the crime affords a striking contrast."

It is urged that it has been and is the practice in this circuit, or at least in this district, to grant writs of error and supersedeas as a matter of course; but I am unable to discover anything in the legislation of Congress or in the reported cases justifying that practice, and it is difficult to understand how the statement can have any foundation in fact, as the practice has none in law; but, if such proves to be the fact, it will relieve trial judges of much irksome labor, and will also relieve them from responsibility for any condition that results from following that practice, and place responsibility therefor where it belongs. My doubts as to the prevalence of the practice are confirmed by the fact that in the cases of U. S. v. McDonald (D. C.) 293 Fed. 433 and U. S. v. Bok (D. C.) 293 Fed. 443, following the views expressed herein, I denied the petitions for writs of error and supersedeas. The petitions were thereafter presented to Judge Stone, of the Circuit Court of Appeals, who also denied them, and in doing so stated that they were denied for the reasons stated by me.

It is suggested that, if the practice I am following were pursued generally, it would materially reduce the labors of the Circuit Court of Appeals, by reducing the number of cases without merit that reach and occupy the time of that court. I think that rarely, if ever, a judge will be found in a federal court who will not be anxious to allow a writ of error to bring about a review of any case tried before him, where an inspection of the record indicates that error prejudicial to the petitioner has probably intervened. Unless an inspection of the record does afford reasonable grounds for believing that error has been committed, it is my conviction that a positive duty, and one that he has no right to shirk, rests upon a trial judge to deny the writ and refuse the supersedeas.

Having reached the conclusion that no case has been made by the record herein for a writ of error and supersedeas, the prayer of the petition is denied. It is so ordered.