10-0309-cv
Sinkov v. AmeriCor

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of April, two thousand eleven.

PRESENT: CHESTER J. STRAUB,
     ROBERT D. SACK,
     GERARD E. LYNCH,
        *Circuit Judges.*

_____

DONNY A. SINKOV, as Administrator of the ESTATE OF SPENCER E. SINKOV, deceased, DONNY A. SINKOV, and HARA SINKOV,
     *Plaintiffs-Appellees*,

      v.                No. 10-0309-cv

AMERICOR, INC.,
     *Defendant-Appellant*,

DONALD B. SMITH, individually and in his official capacity as Sheriff of Putnam County, JOSEPH F. VASATURO, individually, LOUIS G. LAPOLLA, individually, THE COUNTY OF PUTNAM,
     *Defendants.**

_____

FOR APPELLANT:    Timothy P. Coon (Bernice E. Margolis, *on the brief*), Wilson

_____

 * The Clerk of Court is respectfully instructed to amend the official caption in this case to conform to the listing of the parties above.

Elser Moskowitz Edelman & Dicker LLP, White Plains, NY.

FOR APPELLEES:          Kim Berg, Gould & Berg LLP, White Plains, NY.

Appeal from the United States District Court for the Southern District of New York (Paul E. Davison, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Defendant-appellant AmeriCor, Inc. ("AmeriCor") appeals from a judgment of the district court, entered pursuant to a jury verdict in favor of the plaintiffs, the parents and estate of decedent Spencer Sinkov, holding AmeriCor partially liable for deliberate indifference, negligence, and wrongful death, and awarding $750,000 in damages, $274,320 in attorneys' fees, and $11,302.20 in costs. The jury apportioned AmeriCor's liability at 35 percent, reducing its responsibility for the damages award to $264,950. The district court further reduced this award to $257,000 to reflect the amount paid by non-appellant defendants, who settled earlier in the litigation. The court declined to reduce or apportion the attorneys' fees or costs, holding AmeriCor responsible for the total amounts.

On appeal, Americor argues (1) that plaintiffs' evidence was insufficient to support a finding that "AmeriCor was aware of Sinkov's medical condition so as to be found deliberately indifferent to a serious medical need of Sinkov"; (2) that the jury's apportionment of AmeriCor's liability was against the weight of the evidence; (3) that plaintiffs' expert witness, Dr. Gary Crakes, should not have been permitted to testify about Sinkov's loss of earning capacity because his testimony was (i) purely speculative and (ii)

2

irrelevant since Sinkov's estate was not entitled to recover for loss of earning capacity; (4) that the jury's $300,000 award for conscious pain and suffering was unsupported by the evidence; and (5) that the district court should have apportioned attorneys' fees according to liability.

I.    **AmeriCor's Knowledge of Sinkov's Suicide Risk**

We review a district court's denial of a claim of evidentiary insufficiency de novo, "consider[ing] the evidence in the light most favorable to the non-moving party and giv[ing] that party the benefit of all reasonable inferences from the evidence that the jury might have drawn in that party's favor." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000). We will reverse the district court's decision "[o]nly if there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [the moving party]." Id., quoting LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995) (internal quotation marks omitted; alternation in original).

AmeriCor contends that plaintiffs' evidence failed to demonstrate that it had actual knowledge of Sinkov's risk of suicide, as required by Caiozzo v. Koreman, 581 F.3d 63 (2d Cir. 2009). But plaintiffs presented ample evidence to support the jury's verdict and to satisfy Caiozzo's requirements. The jury heard evidence that AmeriCor knew of New York's minimum standards for detainees who present signs that they are at risk of suicide; that Sinkov answered "Yes" to ten questions on the suicide screening form at intake, more than

3

the number required to trigger constant monitoring; and that one of AmeriCor's nurses signed the first page of the packet that contained Sinkov's suicide screening form, in a box that signified that the nurse had received the intake packet and reread all of it. That was evidence of what AmeriCor *actually knew* about Sinkov's risk of suicide, and not, as AmeriCor claims, merely evidence of what the company should have known. Taken together, that evidence was sufficient "to support a conclusion by a reasonable juror" that AmeriCor "was actually aware" of Sinkov's risk of suicide and was deliberately indifferent to that risk. Caiozzo, 581 F.3d at 72.

Furthermore, the district court's instructions to the jury accurately mirrored the requirements set out in Caiozzo. The instructions made clear that, in order to prove deliberate indifference, "plaintiffs must demonstrate by a preponderance of the evidence that the defendant knew of and disregarded an excessive risk to inmate health or safety." The jury was specifically advised that evidence "that a reasonable person would have known or that the defendant should have known of the serious medical needs or the risk to Spencer Sinkov's safety" was insufficient to prove deliberate indifference.

AmeriCor argues that, under Caiozzo, actual awareness of an inmate's medical condition may not be proved "by inference." AmeriCor fundamentally misreads Caiozzo. In that case, we held that "an injured state pretrial detainee, to establish a violation of his Fourteenth Amendment due process rights, must prove, *inter alia*, that the government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware," and that evidence "that [a defendant] *should have* been aware that [the detainee] was

4

in immediate danger" was insufficient. Caiozzo, 581 F.3d at 71 (emphasis in original).

Nothing in Caiozzo prohibits juries from reviewing all the evidence and drawing an inference of actual knowledge from circumstantial evidence. See Farmer v. Brennan, 511 U.S. 825, 842 (1994).

Accordingly, AmeriCor's claim that the verdict was not supported by sufficient evidence is without merit.

## II. The Jury's Apportionment of Liability

The jury held AmeriCor responsible for 35 percent of plaintiffs' damages, apportioning 65 percent of the liability to Suffolk County and its employees. AmeriCor contends that the jury's apportionment was against the weight of the evidence, and that "a new trial must be ordered with respect to this issue."

"[L]iability is apportioned by assessing the damage inflicted by each [joint tortfeasor]," and apportionment is therefore "an issue of fact for the jury." Schipani v. McLeod, 541 F.3d 158, 163 (2d Cir. 2008) (internal quotation marks and citations omitted). Plaintiffs presented substantial evidence of AmeriCor's blameworthiness, and we see no reason to disturb the jury's allocation of liability. See Kreppein v. Celotex Corp., 969 F.2d 1424, 1427 (2d Cir. 1992).

The jury heard evidence that AmeriCor contracted with the County to provide medical care to detainees; that its employees worked in the jail 24 hours per day, every day; that AmeriCor employees played an integral role in jail operations, including in the detainee-intake process, the review of intake forms, and the monitoring and referral of detainees for

5

mental-health services; that AmeriCor knew of New York's minimum standards for supervision of pretrial detainees; and that an AmeriCor nurse was aware that Sinkov had presented as a suicide risk and failed to order protective measures. The jury's assignment of a relatively modest share of liability to AmeriCor was entirely reasonable.

## III. Expert Witness Testimony on Loss of Earning Capacity

AmeriCor argues that expert testimony about Spencer Sinkov's loss of earning capacity was impermissibly speculative, and was in any event irrelevant since neither Sinkov's estate nor his parents were "entitled to recover lost earnings as there was no survivor who relied on [him] for financial support." We find no reason to disturb the district court's admission of the evidence.

Trial courts have "great latitude in deciding whether to admit or exclude expert testimony." United States v. Onumonu, 967 F.2d 782, 786 (2d Cir. 1992). Their decisions "[are] to be sustained unless manifestly erroneous." Salem v. United States Lines Co., 370 U.S. 31, 35 (1962); see also Fed. R. Evid. 702. "Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial, and his decision of it is conclusive, unless clearly shown to be erroneous as a matter of law." Stillwell & Bierce Mfg. Co. v. Phelps, 130 U.S. 520, 527 (1889).

We have held that "[w]here lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18,

6

21 (2d Cir. 1996). However, "other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." Id. (internal quotation marks omitted).

Estimates of a deceased person's future earning capacity are inherently speculative to some degree. Cf. Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1189 (2d Cir. 1992). However, it is within the district court's discretion to determine "whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 208 (2d Cir. 1984), citing Fed. R. Evid. 703. Here, we agree with the district court that Dr. Crakes's testimony was not based on unrealistic assumptions regarding Sinkov's future employment prospects.

Dr. Crakes provided the jury with three alternative calculations of Sinkov's loss of earning potential, based on the earning capacities of (1) a secondary school teacher working until age 65; (2) a typical man who holds an associate's degree, from age 22 to age 65; and (3) a typical man who holds a bachelor's degree, from age 25 to age 65. Particularly in light of the educational credits Sinkov had already earned towards his associate's degree before his death, as well as Sinkov's stated intention to become a teacher, Dr. Crakes's appraisals of loss of earning potential were rooted in the evidence. AmeriCor had every opportunity to argue to the jury that Sinkov's use of drugs undercut the likelihood that he would accomplish these ambitions. And its argument apparently carried weight, as the jury dramatically discounted the expert's projections, awarding plaintiffs $450,000 in damages on the deliberate indifference claim, 28 percent of Dr. Crake's lowest earnings projection. The possibility that Sinkov would straighten himself out, complete his education, and

7

become a productive member of society was hardly so unlikely as to preclude the jury from considering it.[1]

Accordingly, AmeriCor's speculativeness argument is one for the jury, as it "go[es] to the weight, not the admissibility," of Dr. Crakes's testimony. Tyler, 958 F.2d at 1188. It was for the jury to consider how long Sinkov might have worked, in what jobs, and at what salary. The trial court was well within its discretion in concluding that Dr. Crakes's testimony could assist the jury in performing its factfinding role.

AmeriCor also argues that Dr. Crake's testimony was irrelevant, contending that Sinkov's estate was legally barred from recovering damages for loss of earning capacity. The argument ignores the significant distinction between state and federal law.

AmeriCor correctly points out that under New York law, post-death lost-earnings damages are not recoverable in wrongful death cases where a decedent leaves behind no dependents and no persons who reasonably expect to receive future support from him. See Freier v. Westinghouse Elec. Corp., 303 F.3d 176, 199-200 (2d Cir. 2002); Zelizo v. Ullah, 769 N.Y.S.2d 255, 273 (1st Dep't 2003). Had the district court admitted Dr. Crakes's earnings testimony as bearing on plaintiffs' *state law* claims, we would agree that his testimony was irrelevant and should have been excluded. But that is not what the district court did. The record makes clear that Dr. Crakes's testimony regarding loss of earning

_____

[1] Indeed, it is not even clear that the jury intended to award *any* damages specifically for loss of earning capacity: the court instructed that the jury could award damages under § 1983 not only for pecuniary losses, but also for "intangible damages such as mental anguish, pain, suffering and the loss of Spencer's enjoyment of life."

8

capacity was introduced only for, and was explicitly limited to, the estate's 42 U.S.C. § 1983 claim.

The New York authority on which AmeriCor relies does not address the extent of damages permitted in an action for violation of constitutional rights. We have long recognized that when state law damages limitations conflict with the purposes of § 1983, we need not defer to those limitations. We have concluded in the past, for example, that New York's survival statute was inconsistent with § 1983 because (at the time) the New York statute "prevent[ed] the survival of claims for punitive damages after the death of the plaintiff's decedent." McFadden v. Sanchez, 710 F.2d 907, 911 (2d Cir. 1983). In McFadden, we stated that

> we have no doubt that limitations in a state survival statute have no application to a [§] 1983 suit brought to redress a denial of right that caused the decedent's death. To whatever extent [§] 1988 makes state law applicable to [§] 1983 actions, it does not require deference to a survival statute that would bar or limit the remedies available under [§] 1983 for unconstitutional conduct that causes death.

Id. (internal citation omitted). Several federal courts that have addressed the issue have applied similar logic to allow damages for loss of earning capacity in actions for constitutional violations.[2] This Court, however, has not had occasion to address the issue.

We decline to do so here. AmeriCor has not directly addressed, beyond a few

---

[2] See, e.g., Andrews v. Neer, 253 F.3d 1052, 1063-64 (8th Cir. 2001); Berry v. City of Muskogee, 900 F.2d 1489, 1507 (10th Cir. 1990); Sparks v. Susquehanna Cnty., No. 3:05 Civ. 2274, 2009 WL 1598125, at *3 (M.D. Pa. 2009).

conclusory assertions, the appropriate standard for damages under § 1983, focusing instead on the undisputed point that *New York law* does not allow for such damages – an argument that is at best oblique to the federal question. "Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). We decline to address a substantial and potentially far-reaching issue without adequate briefing.

## IV. **Damages for Conscious Pain and Suffering**

AmeriCor challenges the $300,000 damages award for conscious pain and suffering, arguing (1) that there was no evidence to support submission to the jury of a claim for conscious pain and suffering and (2) that the award was excessive. Both challenges are unavailing.

In order to be "entitled to an instruction on a claim," a party need only show "that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Plaintiffs made such a showing here. The record contains evidence from which a jury could have inferred that Sinkov experienced conscious pain and suffering, and plaintiffs were therefore entitled to an instruction on this claim.

That evidence includes the New York State Commission of Correction's final report on Sinkov's death, which was received in evidence at trial without objection from AmeriCor. The report noted that a guard "found inmate Sinkov hanging from the cell bars by his sweatshirt. Sinkov had tied the shirt at the top of the front cell bars and sat down. He was

10

found facing the back of the cell with one foot on the floor and one foot on the bunk." The jury also heard testimony that, when Sinkov was cut down from the bars, he hit his head on the edge of a table, and that a nurse administered CPR on him for ten to fifteen minutes before he was pronounced dead. The jury was entitled to rely on common sense and common experience to conclude that an amateur, improvised hanging is likely to produce a painful death by asphyxiation, and reasonably could have concluded that Sinkov struggled and suffered in the period between when he placed his homemade noose around his neck and when he lost consciousness. Even assuming arguendo that other evidence in the record might have suggested that Sinkov did not experience conscious pain and suffering, "it would be an undue invasion of the jury's historic function for [us] to weigh the conflicting evidence, judge the credibility of the witnesses and arrive at a conclusion opposite from the one reached by the jury." Lavender v. Kurn, 327 U.S. 645, 652-53 (1946).

AmeriCor also argues that the $300,000 damages award for Sinkov's conscious pain and suffering was excessive. We will set aside a jury's award as excessive only if it "is so high as to shock the judicial conscience and constitute a denial of justice," O'Neill v. Krzeminski, 839 F.2d 9, 13 (2d Cir. 1988), quoting Zarcone v. Perry, 572 F.2d 52, 56 (2d Cir. 1978). "That we personally would have awarded a lesser sum or, if we had been the trial judge, have set the verdict aside, is insufficient." Batchkowsky v. Penn Central Co., 525 F.2d 1121, 1124 (2d Cir. 1975). To set aside the award, we must conclude that the trial judge abused his or her discretion in permitting the verdict to stand. Id.

In determining whether a compensatory award is so large as to shock the judicial

11

conscience, we look to other awards in similar cases. See Ismail v. Cohen, 899 F.2d 183, 186 (2d Cir. 1990); Attridge v. Cencorp Div. of Dover Techs. Int'l, Inc., 836 F.2d 113, 117-18 (2d Cir. 1987). However, "our task is not to balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater. Rather, we inquire whether the . . . verdict is within reasonable range." Ismail, 899 F.2d at at 187. "This inherently imprecise calculation depends on careful analysis of the facts in each case." Attridge, 836 F.2d at 117.

Here, based on the facts of the present case and on a review of pain and suffering awards in other cases, we are satisfied that the jury's $300,000 award for Sinkov's conscious pain and suffering was not excessive. See Gonzalez v. N.Y.C. Hous. Auth., 555 N.Y.S.2d 107, 108 (1st Dep't 1990) ("Asphyxiation by gagging, whether it occurred within minutes or within an hour of the initial assault, is a particularly slow and terrifying way to die and, under the circumstances, we do not find the [$350,000] award for conscious pain and suffering . . . to be excessive."); Rodd v. Luxfer USA Ltd., 709 N.Y.S.2d 93, 94 (2d Dep't 2000) ($300,000 award for pain and suffering where decedent "suffered severe and massive injuries" from any exploding oxygen tank, but the "period of consciousness was limited in duration"); Filipinas v. Action Auto Leasing, 851 N.Y.S.2d 550, 550 (1st Dep't 2008) ($750,000 award where decedent was struck in the head by a van's side mirror, and sustained serious head injuries, but "was heavily medicated and/or sedated" within an hour of the accident). The district court was within its discretion in denying AmeriCor's motion for a new trial on the basis of excessiveness.

12

## V. Apportionment of Attorneys' Fees

Finally, AmeriCor argues that the district court erred by failing to apportion attorneys' fees in the same manner as the jury apportioned liability. We review a district court's ruling concerning fee allocation for abuse of discretion. Rein v. Socialist People's Libyan Arab Jamahiriya, 568 F.3d 345, 350 (2d Cir. 2009). A district court may "hold the responsible parties jointly and severally liable for the fee award," so long as the court "make[s] every effort to achieve the most fair and sensible solution that is possible." Koster v. Perales, 903 F.2d 131, 139 (2d Cir. 1990). "Although apportionment may in some cases be a more equitable resolution, there is no rule in this circuit that requires it whenever possible." Id.

Here, the district court did not abuse its discretion in concluding that allocation of the attorneys' fees was unnecessary. As the court noted, in this case "the action . . . of several defendants produce[d] a single indivisible injury," and therefore AmeriCor could properly be held jointly and severally liable for plaintiffs' fees. In addition, AmeriCor was the only defendant that chose not to settle – a decision that increased plaintiffs' fees. Finally, if AmeriCor had been from the outset the only defendant named in the suit, and the non-appellant defendants had never been involved, plaintiffs' attorneys' fees would likely have been similar to what they turned out to be, since plaintiffs' claims against AmeriCor overlapped substantially with the claims against the other defendants, and since AmeriCor in such a case would surely have attempted to cast blame on the County officers, as it did here, resulting in similar discovery about their actions.

**CONCLUSION**

We have considered AmeriCor's other arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14