## WOOLNER & CO. et al. v. RENNICK et al.

(Circuit Court, S. D. Illinois, N. D. September 14, 1908.)

No. 129.

1. INTERNAL REVENUE (§ 40*)—MISBRANDING OF LIQUORS—SCOPE OF STATUTE.
   Rev. St. § 3449 (U. S. Comp. St. 1901, p. 2277), making it a penal offense for any person to ship or remove any spirituous or fermented liquors or wines under any other than the proper name or brand by which they are known to the trade, is intended to prevent frauds on the revenue, and has no application to marks or brands placed on packages by government officers.

   [Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 40.*]

2. FOOD (§ 7*)—REGULATIONS FOR BRANDING LIQUORS—IMITATION LIQUORS—"RECTIFIERS."
   Rev. St. § 3244 (U. S. Comp. St. 1907, p. 2096), in defining rectifiers, includes "every person who, without rectifying, purifying or refining distilled spirits, shall, by mixing such spirits, wine or other liquor with any materials manufacture any spurious imitation or compound liquors for sale under the name of whisky, brandy * * * or any other name." *Held*, that in view of such statutory recognition of the manufacture of "imitation whisky," etc., and of the process of such manufacture, the regulation promulgated by the Commissioner of Internal Revenue May 5, 1908, for the guidance of officers and employés of the department which directs that "alcohol, commercial alcohol or high wines which have been manipulated by the aid of artificial flavors, colors or extracts, or otherwise, so as to resemble some particular kind of potable spirits, will be marked with the name of such spirits preceded by the word 'Imitation,' as for example 'Imitation Whisky,'" is a proper and reasonable regulation, having also in view the provisions of Food & Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1907, p. 928), notwithstanding the fact that such compounds may have been previously sold in the trade under the name of the liquors they imitate.

   [Ed. Note.—For other cases, see Food, Dec. Dig. § 7.*
   For other definitions, see Words and Phrases, vol. 7, p. 6022.]

3. WORDS AND PHRASES—"WHISKY"—"NEUTRAL SPIRITS."
   Whisky, within the purview of Food & Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1907, p. 928), is the product of sound grain, distilled at a low temperature so as to retain in the distillate the congeneric properties of the grain, which give to the liquor, when matured by aging in charred casks, its desirable potable character. Neu-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tral spirits, which are distilled at a high temperature, may be made from different materials and do not contain such properties, and which are not rendered potable by aging, although reduced by water to potable strength and from which most of the fusel oil has been removed, are not whisky nor a like substance with whisky.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 8, p. 7445.]

In Equity. Suit for injunction.

Brown, Wheeler, Brown & Hay and Warwick M. Hough, for complainants.

W. A. Northcott, U. S. Atty., and H. A. Converse and J. H. Story, Asst. U. S. Attys., for defendants.

HUMPHREY, District Judge. The present application is for a preliminary injunction restraining certain officers and agents of the Internal Revenue Department from marking as "Imitation Whisky" potable distilled spirits from grain, of approximately 100 proof, which have been rectified so as to remove most of the fusel oil and aldehydes.

The complainants are engaged in the business of rectifying distilled spirits, and the defendants are acting under printed regulations promulgated May 5, 1908, by the Commissioner of Internal Revenue, as follows:

"(4) Alcohol, commercial alcohol or high wines which have been manipulated by the aid of artificial flavors, colors or extracts, or otherwise, so as to resemble some particular kind of potable spirits, will be marked with the name of such spirits preceded by the word 'Imitation,' as for example, 'Imitation Whisky.'"

The contention of complainants is: First. That the regulation of May 5, 1908, is in violation of section 3449 of the Revised Statutes (U. S. Comp. St. 1901, p. 2777); that the product in question has, for a long time, been known to the trade as whisky; that the complainants, as owners of same, would be prohibited by section 3449 from shipping it under any other name than whisky, "that being the name known to the trade," and therefore the commissioner has no power to require a mark or brand which does not conform to the trade-name. Second. That the regulation is unreasonable, and therefore illegal. Third. That the injunction should issue under the rule known as "balance of convenience."

Section 3449 is not in point. That section was passed by Congress to prevent frauds on the revenue, and to assist revenue officers in discovering such frauds. It has no reference whatever to marks or brands placed upon packages by government officers. The authorities are numerous and clear upon this question.

The argument on behalf of complainants that the new regulation is unreasonable, and therefore void, raises the real question in the case. Powers requiring judgment and discretion, when conferred by law upon executive officers, must be exercised with reason. When found to be clearly reasonable, the courts will not interfere with officers acting under discretionary powers. When found to be clearly unreasonable, such action will be held void.

That there is a product called "whisky," and also a product called "imitation whisky," the law itself clearly contemplates, and section 3244 (U. S. Comp. St. 1901, p. 2096), in defining what is meant by the business of rectifying, denominates the maker of imitation whisky and other imitation liquors as a rectifier, and in passing upon the question whether the regulation of May 5, 1908, is reasonable or unreasonable, it is necessary to determine the fact whether the commissioner in that regulation has correctly defined an imitation whisky. That counsel have regarded this as the crucial question in the case is evidenced by the fact that both parties have presented to the court numerous affidavits upon the subject. Complainants present 69 of such affidavits, and the defendants a lesser number. These affidavits are from rectifiers and distillers, members of the wholesale and retail liquor trade, and scientists and chemists of high rank. They do not agree. Indeed, it may be said that some of them present diametrically opposite views more or less elaborately stated.

In brief, the affidavits for complainants tend to support the proposition that a distilled spirit from grain reduced by water to potable strength from which most of the fusel oil has been removed by rectification is whisky, and that all distilled spirits from grain are "like substances," without reference to differences in their percentage of alcohol or of secondary products present therein.

The affidavits presented for defendants tend to support the view that whisky is a product made by the proper distilling of a fermented mash of grain with such care and at such low temperature as to retain the congeneric ingredients of the grain, aged under a normal temperature for not less than four years in charred oak casks. Thus broadly in statement do the chemists disagree. They are more or less persuasive to the court according to the soundness of scientific reasoning given in support of their statements.

The convincing weight of testimony on this subject given by such men as Profs. Frear of Pennsylvania, Scovill of Kentucky, Tolman and Adams of Washington, D. C., Shepherd of South Dakota, Jenkins of Maine, Fischer of Wisconsin, and many other state analysts and chemists of repute, is to the effect that neutral spirits reduced by water to potable strength, from which most of the fusel oil has been removed, is not a like substance with whisky. Among the various reasons given for this conclusion are the following: Whisky can only be made from sound grain, while neutral spirits can be made from moldy, heated, or unsound grain, or from various other substances, as fruits or vegetables. Whisky is made at a low temperature, say, 150 to 155 degrees, so as to retain in the distillate the congeneric properties of the grain, the oil, the flavor, the higher alcohols and aldehydes, the esters, acids, and salts, which, when modified by further treatment, give to whisky its desirable potable character—a character which alcohol never possesses. Neutral spirits are made at a very high temperature for the very purpose of carrying off, so far as possible to do so, every property of the distillate, except alcohol and water. Whisky is aged and matured for not less than four years in charred oak barrels. Neutral spirits require no aging, but may pass immediately in-

to consumption. The maturing of the product in charred barrels modifies and corrects its raw, biting taste. The action of the congeneric properties of the grain so retained in the liquor on each other, and the action of the charred wood on all by the lapse of years, results in a flavor, an aroma, a color, a blending of inherent constituents resulting in a beverage agreeable to the sight, to the smell, and to the taste. In neutral spirits the name signifies the character. There is neither taste, smell, nor color, and no amount of aging in charred or uncharred barrels will change it without the addition of foreign matter. The time required for maturing whisky, resulting in a loss of perhaps 30 per cent. in quantity by evaporation and absorption, adds greatly to the expense of making it over neutral spirits, which require no maturing and suffer no loss of quantity thereby.

The record also shows that diluted spirits treated with artificial coloring matter and essences are not sold to the trade as such, but are always presented under such labels, terms, and descriptions as import age and maturity, and which the consumer identifies with the genuine product whisky. The regulation is in all respects reasonable, and is therefore legal. The fact that this practice has, to some extent, prevailed for many years, does not show in the complainants any right which the court should protect. It shows rather that the Commissioner of Internal Revenue has been tardy in promulgating a regulation which he had legal power to enforce even before Congress gave emphasis to the subject by the enactment of Food & Drugs Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1907, p. 928).

The preliminary injunction will be denied.