IN RE WRIGHT.

———

IN RE GRAVES.

———

IN RE TAYLOR.

———————

TRADEMARKS; TEN YEARS' USE; FRAUD.

1. Applicants for registration of a mark as a trademark for whisky, under sec. 5 of the trademark act of Congress of February 20, 1905, on the ground that they were in the exclusive use of it as a trademark for ten years prior to the passage of the act, are not entitled to registration, where it appears that they used the mark on goods advertised and represented to be pure whisky, when in fact their product was a blend and compound, respectively. (Following *Levy* v. *Uri,* 31 App. D. C. 441.)

2. In a trademark interference involving the question of prior use of a mark applied to whisky under the ten-year clause of the trademark act of Congress of 1905, where two of the applicants have been found not to be entitled to registration, because of fraud practised on the public by applying the mark to a blend and a compound while advertising

and selling the product as pure whisky, the third party is not entitled to registration on the ground that the compound and imitation whiskies of his opponents are not goods of the same descriptive qualities as pure whisky, and that therefore he must be said to have had the exclusive use of the mark; as all such products belong to one general class, and are merchandise of the same descriptive properties, within the meaning of that act. (Citing *Worcester Brewing Corp.* v. *Rueter & Co.* 30 App. D. C. 428; *Levy* v. *Uri,* supra; and *Phœnix Paint & Varnish Co.* v. *John T. Lewis & Bros. Co.* 32 App. D. C. 285.)

Nos. 576, 577, and 579. Patent Appeals. Submitted May 18, 1909. Decided June 1, 1909. Rehearing denied October 22, 1909.

HEARING upon appeals by three applicants for registration of a trademark, who had been placed in interference, from a decision of the Commissioner of Patents, refusing registration of the marks of all of them.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Arthur E. Wallace* for the appellants Wright & Taylor.

*Mr. Samuel L. Powers* for the appellants C. H. Graves & Sons.

*Mr. George W. Rea* and *Mr. J. G. Carlisle* for the appellants E. H. Taylor, Jr., & Sons.

*Mr. Frederick A. Tennant* for the Commissioner of Patents.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

These cases come here on appeal from a decision of the Commissioner of Patents in a trademark interference, involving the right to the registration of trademarks for whisky, the dominating feature of each being the word "Taylor." All of the applications were refused by the Commissioner. The marks sought to be registered are indicated opposite the names of the respective applicants, as follows: Taylor & Williams, "Old

Taylor;" Wright & Taylor, "Kentucky Taylor;" C. H. Graves & Sons, "G. A. Taylor;" and E. H. Taylor, Jr., & Sons, "Taylor." No appeal was taken by Taylor & Williams; hence, they are eliminated from this inquiry.

The Commissioner found that the marks sought to be registered are not technical trademarks. Each of the parties claim the right to register under the following provision of sec. 5 of the trademark act of February 20, 1905: "That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several States, or with Indian tribes, which was in actual and exclusive use as a trademark of the applicant or his predecessors from whom he derived title for ten years next preceding the passage of this act." [33 Stat. at L. 726, chap. 592, U. S. Comp. Stat. Supp. 1907, p. 1010.] It is clear that the marks before us are not registerable as technical trademarks. The right to registration under the above statute is the sole question to be considered. It is conceded that each of the marks in question was used continuously by the party here claiming it for more than ten years prior to February 20, 1905.

The Commissioner of Patents found from the evidence that Wright & Taylor and C. H. Graves & Sons had been using their marks on goods purporting, from the advertisements and representations contained on the labels, to be pure whisky, when, in fact, the whisky was either a blend or a compound. The fraud thus practised upon the public was held, upon the authority of *Levy* v. *Uri,* 31 App. D. C. 441, to be sufficient to devest these parties of any standing in the Patent Office. We agree with the Commissioner that the evidence shows that the marks were used by Wright & Taylor and C. H. Graves & Sons on whisky represented to be pure, when, in fact, construing the evidence most liberally in their favor, it was only entitled, in the case of the former, to be marked a compound, and, in the latter, a blend. We also find no fraudulent or deceptive use of the mark by E. H. Taylor, Jr., & Sons.

Having established this fact as to their opponents, E. H. Tay-

lor, Jr., & Sons insist that they have had exclusive use of the trademark in issue for ten years next preceding the passage of the trademark act, inasmuch as the opposing parties are shown to have used their marks deceptively during that period. This contention is based upon the theory that compound and imitation whiskies are not goods of the same descriptive qualities as pure, straight whisky. This argument would have great force in a court of equity in a suit for infringement or unfair competition, but we are considering the express terms of a statute. In Sec. 1 of the trademark act, we find that registration may be procured for a mark to be used on a "class of merchandise," and the applicant must name "the class of merchandise and the particular description of goods comprised in such class to which the trademark is appropriated." Section 5 forbids the registration of a mark the same as one known to be in use by another on "merchandise of the same descriptive properties," or which resembles closely the mark of another "appropriated to merchandise of the same descriptive properties." In sec. 16, one may render himself liable for damages for using a colorable imitation of the trademark of another on merchandise of "substantially the same descriptive properties." It will be observed that Congress used liberal terms in placing limitations upon the registration and use of similar trademarks. This is to protect the owner in a liberal use of his mark, but more particularly to protect the public from imposition arising from confusing goods of the same general class bearing the same or similar marks.

It is insisted by counsel for E. H. Taylor, Jr., & Sons that the proviso to sec. 5 of the trademark act is to protect rights already acquired at the time of the passage of the law. The mark in question being nontechnical, no right could have been asserted to it as a trademark; hence, Congress took no right away. So long as there was not a right to be devested, there was none to be reserved. Congress, by this act, was not preserving an existing right, but providing a method by which a right that did not exist before might be acquired. Hence, it was within its province to place any restriction upon those seeking its bene-

fits that it might deem proper. Since, therefore, E. H. Taylor, Jr., & Sons are here claiming a privilege, and not asserting a right, we think they come within the limitations of the statute.

The act of Congress of June 30, 1906, known as the "food and drugs act," was aimed at the suppression of the manufacture and sale of adulterated food and drugs, and also to prevent their misbranding. The classification of whisky and the proper branding of it under this act has been the source of considerable contention. Attorney General Bonaparte, in a decision interpreting this feature of the act (26 Ops. Atty. Gen. 216), said: "The definition of 'whisky' as a natural spirit involves as its corollary that there can be such a thing as 'imitation whisky.' If the same process were followed of which we spoke in connection with artificial wine, namely, if ethyl alcohol, either pure or mixed with distilled water, were given, by the addition of harmless coloring and flavoring substances, the appearance and flavor of whisky, it is impossible to find any other name for the product, in conformity with the pure-food law, then 'imitation whisky.'" The Attorney General properly held that "blend," "compound," and "imitation" whiskies are all entitled to the name of "whisky." They all belong to the one general class. They are "merchandise of the same descriptive properties." This view of the Attorney General is impliedly supported by a number of later decisions of the Federal courts. *Union Distilling Co.* v. *Bettmann* (not yet reported); *Woolner* v. *Rennick,* 170 Fed. 662; *Levy* v. *Uri,* supra.

In *E. H. Taylor, Jr., & Sons Co.* v. *Taylor,* 124 Ky. 173, 85 S. W. 1085, a suit between two of the parties to this interference, the court of appeals of Kentucky, considering the propriety of designating a mixture of whisky and ethyl alcohol as "a blend," to protect the public from being defrauded by confusing it with "straight" whisky, said: "The defendant may properly sell his brand of 'Old Kentucky Taylor,' provided he so frames his advertisements as to show that it is a blended whisky; but he cannot be allowed to impose upon the public a cheaper article, and thus deprive appellant of the fruits of his energy and expenditures by selling his blended whisky under labels or ad-

vertisements which conceal the true character of the article,
for this would destroy the value of the appellant's trade." This
defines what we conceive to be the purpose, both of the trade-
mark act and the pure-food law,—to prevent unfair competition,
and to protect the public from being imposed upon by designing
manufacturers and traders.

We have held to a liberal interpretation of those clauses of
the trademark act forbidding the registration of similar marks
to be used on the same general class of merchandise. In the
case of *Phœnix Paint & Varnish Co.* v. *John T. Lewis & Bros.
Co.* 32 App. D. C. 285, we said: "We think two trademarks
may be said to be appropriated to merchandise of the same de-
scriptive properties in the sense meant by the statute when the
general and essential characteristics of the goods are the same.
The rule that the goods must be identical would defeat the pur-
pose of the statute and destroy the value of trademarks. The
test is whether there is such a sameness in the distinguishing
characteristics of the goods as to be likely to mislead the general
public."

The statute requires exclusive use, which we have held to be
sole use. In *Worster Brewing Corp.* v. *Rueter & Co.* 30 App.
D. C. 428, this court, considering the meaning of the word "ex-
clusive," as used in sec. 5 of the trademark act, said: "Inas-
much as the word is used in the statute in connection with the
words 'actual use,' and both expressions are used to qualify the
special right conferred by this provision of the act, we hold
that an actual use must be shown to have been possessed and en-
joyed by the applicant, to the sole exclusion of all others. The
use could not be exclusive if, during the period, it appears that
another was using the same word as a trademark upon the same
character of goods." We have adhered to this ruling in many
decisions since rendered. It cannot be said that there has been
sole use by E. H. Taylor, Jr., & Sons of the word "Taylor" as
a trademark for whisky when the record discloses the use of
this mark by at least three others during the ten years' period
on goods of the same descriptive properties.

A nontechnical mark cannot be registered under this provi-

sion of the statute, when it is so similar to another mark in use during the same period as to cause confusion in trade. Assuming that Wright & Taylor are producing a whisky compound, and should advertise and mark it as such, and C. H. Graves & Sons are producing a whisky blend, and should advertise and mark it as such, they would doubtless have the right to use their respective marks without infringing the use of the mark of E. H. Taylor, Jr., & Sons. Can it be said that these three brands of whisky, though marked as above described, could come into the market, all bearing the "Taylor" mark, and not create confusion? This is inconceivable, and this is what the statute aims to prevent. They are all whiskies—"merchandise of the same descriptive properties"—produced and used for the same purpose. The difference is one of quality, and not of description. While it is, perhaps, unfortunate that one honestly complying with the law is compelled to suffer at the hands of commercial sharks, there is no relief afforded in this proceeding. It must be found in another forum.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings, as by law required.                                    *Affirmed.*

Motions for rehearing in Nos. 576 and 579 were overruled October 22, 1909.