UNITED STATES v. FISCHER.

(District Court, E. D. Pennsylvania. September 27, 1917.)

Nos. 145, 146.

1. CRIMINAL LAW ⬤⇒481, 494—EXPERT TESTIMONY—ADMISSIBILITY AND WEIGHT.
   The admissibility of expert testimony, as dependent on the qualifications of the expert, is to be determined by the trial judge, and its probative value is to be appraised by the jury.

2. CRIMINAL LAW ⬤⇒478(1)—EXPERT TESTIMONY—QUALIFICATIONS OF EXPERT.
   An objection that a witness, qualifying as an expert generally, lacks knowledge of the subject-matter of his testimony, is one going to the weight rather than to the admissibility of the evidence.

3. CRIMINAL LAW ⬤⇒452(1)—OPINION EVIDENCE—ADMISSIBILITY.
   On a trial for using the mails in furtherance of a scheme to defraud, an increase in the volume of purchases on stock account between certain dates was properly permitted to be shown by the testimony of the manager of the business, who had a knowledge of the stock carried, though unable to give an inventory of the things of which the stock consisted and the value of each item.

4. CRIMINAL LAW ⬤⇒510—TESTIMONY OF ACCOMPLICES—NECESSITY OF CORROBORATION.
   The jury might convict upon the testimony of a witness, if believed by them, though tainted by the fact that he was an accomplice, and the further fact that he had been guilty of other acts reflecting upon him, and justifying the finding that he had done what a man of truth and honesty would not have done, and the court could not peremptorily tell the jury that his testimony should not be considered, unless corroborated, and only to the extent to which it was corroborated.

5. CRIMINAL LAW ⬤⇒825(1)—INSTRUCTIONS—REQUESTS—NECESSITY.
   Where the counsel for defendant had repeatedly and earnestly pressed the point upon the court's attention, he had a right to assume that words

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of a charge as to facts discrediting a witness had been chosen with his request in mind, and he was not bound to request specific instructions on every feature of evidence going to the discredit of the witness.

6. CRIMINAL LAW ☞793—INSTRUCTIONS—CODEFENDANTS.

One of two defendants on trial could not complain of instructions favorable to the other defendant, simply because of the contrast therein.

7. CRIMINAL LAW ☞921—MOTION FOR NEW TRIAL—HARMLESS ERROR.

Defendant could not complain on a motion for a new trial that evidence to which he objected was admitted for a limited purpose, instead of generally.

8. CRIMINAL LAW ☞432—EVIDENCE—DOCUMENTARY EVIDENCE—RECEIPTS.

On a trial for conspiracy to use and for using the mails in furtherance of a scheme to defraud persons from whom goods were to be obtained without paying for them, where the persons to be defrauded were permitted to show the receipt of orders for goods, and that they were packed and taken to a carrier, who gave receipts or bills of lading therefor, the receipts or bills of lading were properly admitted, where they were not admitted to show what the goods were, or as evidence or what had been received by defendants.

9. CONSPIRACY ☞28—CONSPIRACY TO COMMIT CRIME—ELEMENTS.

Where defendants planned to defraud prospective creditors of G. by obtaining goods from them without paying for them, and to successfully accomplish the fraud it was necessary to conceal the goods from G.'s trustee in bankruptcy, if such trustee were appointed, it was not necessary, to support a charge of conspiracy to have the bankrupt conceal his assets, to prove that the crime had been actually committed, or that the conspirators verbally expressed their purpose to have the nominal purchaser become a bankrupt, nor was it material whether the bankruptcy proceedings were voluntary or involuntary.

10. CRIMINAL LAW ☞878(2)—VERDICT—CHARGES OF OFFENSE AND CONSPIRACY TO COMMIT OFFENSE.

A charge of conspiracy to commit a crime becomes merged in a charge of the commission of the crime when the latter is proven, and becomes of no moment when there is a general verdict of guilty, well supported by such proofs.

Philip Fischer was convicted of offenses. On motion for a new trial. Motion denied.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

Wm. A. Gray, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The reasons for a new trial, outside of the purely formal ones, when analyzed, disclose complaints of rulings by the trial judge permitting certain witnesses to testify, rulings on evidence, and complaints of the instructions given to the jury.

One of the questions is the propriety of having permitted certain persons to testify as experts. The objection did not raise the question of the admissibility of expert testimony, but the objections were to the qualifications of the witnesses to so testify. In some cases the objection was that the witness, although properly accepted generally as an expert, lacked knowledge of the subject-matter of his testimony. In other instances, the objection was to the qualifications of the witness to testify as an expert. Of the former reasons, five may be taken as typical.

[1-3] Just here a distinction should be noted between the admissibility of such evidence and its probative value. The first must be determined by the trial judge and the latter appraised by the jury. The argument addressed to us against the admissibility of this evidence is disposed of by the comment that it goes to the weight of the evidence rather than to its admissibility. This is said, having in mind that evidence of this character may be so clearly worthless as to call for its rejection. The value of testimony of this character is, moreover, largely dependent upon, or at least affected by, the purpose for which the testimony is introduced. Such a distinction may well move a trial judge in the exercise of the discretionary powers committed to him. The same distinction has its influence in deciding whether a witness had qualified as an expert. The substantial purpose of the inquiries into the values of stock carried at different times was to establish, as a circumstance attending the carrying out of the fraudulent scheme, that there had been an increase in the volume of purchases on stock account between certain dates. This was permitted, and we think properly, to be shown by the testimony of the manager, who had a knowledge of the stock carried, without being able to give an inventory of the things of which the stock consisted and the value of each item, as if he were testifying in an action for the value of goods sold and delivered. The expert, whose competency is denied, was an accountant, who was merely asked to give the result of simple mathematical additions. The only service called for was that which might have been supplied by an adding machine. The objection to the witness was limited to this feature. We think the qualifications of the witness were within the discretionary powers of the trial judge to find.

[4] The real question now raised and emphasized is that stated in the opinion in Reagan v. U. S., 157 U. S. 301, 15 Sup. Ct. 610, 39 L. Ed. 709. It may be stated in the interrogative form of whether the jury should have been cautioned by being informed of the danger of crediting tainted testimony, or peremptorily instructed that it was a principle of law that no such testimony should be considered by the jury, unless it was corroborated, and to the extent to which it was corroborated. The jury was charged in accordance with the first view indicated. The other view is strongly pressed upon us as the correct view.

Two things may be stated expressive of the attitude of the trial court. One is (and to the full benefit of this the defendant is in fairness entitled) the instruction given to the jury, and what we are convinced the jury understood to be the instruction given them, was that they might convict upon the testimony of the witness Haftel, if believed by them, notwithstanding it was tainted by the fact that he was an accomplice, and the further fact that he had been guilty of other acts which reflected upon him, and would justify the finding that he had before done what a man of truth and honesty would not have done. The other thing to be said is that the question of the correctness of the view of the law as given to the jury was so presented as the view accepted in courts of federal jurisdiction, and as no longer an open one. If this be error, the error must be corrected by an appellate court. The trial judge did not feel at liberty to entertain the thought of disregard-

ing the thus settled law, or of weighing the argument that these controlling rulings were otherwise than as they had been construed to be.

The law so being, so far as affects this court, the only remaining question is whether the jury were cautioned as the rule of law requires. We do not understand any complaint to be made on this score, except the omission to call attention to certain admissions made by the witness, from which special culpability is charged to appear. If there was any real possibility that every reason for discrediting the witness was not in the mind of the jury, the appeal now made to us would be persuasive. The discussion of this feature of the case was, however, so full that the questions before the mind of the jury must have been the simple ones of (1) whether the jury could convict on the testimony of Haftel, if the jury credited his testimony, notwithstanding everything which had appeared to his discredit; and (2) whether they did so credit him.

[5] A careful review of the charge convinces us that it is rather open to the criticism of the duty of cautioning the jury being overdone than of being underdone. We pass upon the question now raised as if the court had been expressly requested to charge upon every feature of the evidence which went to the discredit of the witness, and had charged as it did charge. If the caution impressed upon the jury was less than was the right of the defendant, the charge was erroneous. The defendant should have the charge so read, because counsel for defendant did repeatedly and earnestly press this point upon the attention of the court, and had the right to assume that the words of the charge had been chosen with the request in mind, and was not bound to request specific instructions.

The further reason urged, that the parts of the charge which were favorable to the defendant, who was acquitted, by contrast bore hardly, although indirectly, upon the other defendant, who was convicted, may be well founded in fact. This possible unintended effect was in the mind of the trial judge as at least a possibility. The point now is: How could it have been avoided?

[6] Because of this difficulty, the expression of the thought that it was in the power of the jury to acquit one and convict the other was made in as general terms as possible. The inevitable effect was to make the thought obscure. The statement made by counsel seemed to be an invitation to make the instruction specific. This was accordingly done. We do not see that this defendant can complain of instructions favorable to the other defendant simply because of the contrast.

[7, 8] The rulings upon the admission of the bills of lading, etc., must be left to vindicate themselves. We see no error in admitting them for the limited purpose for which they were admitted. It may be they should have been admitted generally. The defendant, however, cannot complain of the limitation. The persons to be defrauded were permitted to show the receipt of orders for goods; that they were packed, and taken to a carrier, who gave for them receipts, which were produced and identified as the receipts given. They did not go in evidence to show what the goods were, or as evidence of what had been received by the defendants. Nor do we feel convicted of the er-

ror assigned in the supplemental paper book. The charge as made must, of course, be proved to justify a conviction. U. S. v. Greene (D. C.) 146 Fed. 803.

[9, 10] The things done of which defendants are accused justified the dual or quadruple charge that they had conspired to commit, and had committed, the offense of using the mails in furtherance of a scheme to defraud, and the other offense of having a bankrupt conceal his assets from his trustee. The persons to be defrauded were prospective creditors of Graboyes. The fraud consisted in getting things of value without paying for them. The concealing of the goods from the trustee in bankruptcy would become a necessity of the successful accomplishment of the fraud, if such trustee were appointed. Whether the bankruptcy proceedings were voluntary or involuntary made no difference. Nor would it be necessary, in order to support a charge of conspiracy to have a bankrupt conceal his assets, to prove that the crime had been actually committed, assuming, of course, overt acts. Nor would it be necessary to prove the verbal expression by the conspirators of their purpose to have the nominal purchaser of the goods become a bankrupt. Without any proof of the verbiage of the unlawful concert of the conspirators, the acts which were concerted would justify and support the charge that they had conspired to do what they in concert attempted to do. The real situation, of course, is that the charge of a conspiracy to commit a crime becomes merged in a charge of the commission of the crime as soon as the latter is proven, and becomes of no moment when there is a general verdict of guilty, well supported by such proofs.

The motion for a new trial is denied.