## UNITED STATES v. GOLDEN.

(District Court, D. Minnesota, Fourth Division. December 31, 1923.)

**1. Criminal law ⬅129(3)—Failure to comply with rules ground for refusing writ of error.**

Where the assignment of errors filed with the petition for writ of error completely ignores the requirements of Rule 11 of the Circuit Court of Appeals, the writ should be refused.

**2. Criminal law ⬅1129(3)—Requisites of assignment of error in admission of evidence stated.**

Where errors assigned are directed against the admission of testimony, the assignment to conform to Rule 11 of the Circuit Court of Appeals must quote the full substance of the evidence admitted and show the exact objection interposed, ruling made, and exception taken.

**3. Criminal law ⬅459—Witness held qualified to testify as to kind of liquor drank.**

The testimony of a prohibition agent that in the course of his employment as such he had many times drunk liquor for the purpose of determining its character *held* to qualify him to testify that a particular liquor he drank was moonshine whisky.

**4. Criminal law ⬅481, 1153(2)—Ruling as to competency of expert is discretionary.**

The competency of a witness to testify as an expert is a preliminary question to be decided by the trial judge, and his determination of that question is conclusive unless the ruling made is manifestly and palpably erroneous.

**5. Intoxicating liquors ⬅134 — Moonshine whisky is "whisky" within the meaning of the Prohibition Act.**

Moonshine whisky is "whisky" within the meaning of that word as used in National Prohibition Act, tit. 2, § 1 (Comp. St. Ann. Supp. 1923, § 10138½), providing that the term "intoxicating liquor" includes whisky.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Whisky.]

**6. Criminal law ⬅304(20)—Indictment and information ⬅61—Judicial notice taken that whisky is intoxicating and fit for beverage purposes, and no allegation necessary.**

That whisky, and particularly moonshine whisky, is intoxicating and, in a legal sense, fit for beverage purposes, is a matter of common knowledge of which judicial notice will be taken, and need not be alleged or proved.

**7. Criminal law ⬅1169(2)—Harmless error to admit testimony of unqualified witnesses of fact judicially noticed.**

As the court and jury were bound to know as a matter of common knowledge that moonshine whisky contained more than one-half of 1 per cent. of alcohol and was intoxicating, the admission of testimony of unqualified witnesses as to its alcoholic content and intoxicating character was harmless.

**8. Criminal law ⬅656(1)—Court may properly call attention to omission to prove venue.**

The court may properly call the attention of the prosecuting attorney to the fact that he has omitted to prove venue and permit him to supply the omission.

**9. Criminal law ⬅447—Clerical error as to date not ground for excluding evidence.**

That the return on a search warrant through clerical error stated the date as 1922, instead of 1923, is not ground for striking out evidence relating to the true date.

**10. Criminal law ⬅901—Motion to dismiss waived by introducing evidence.**

Where defendant, after moving to dismiss each count of the information for want of sufficient evidence, at the close of the government's case, proceeded to put in his case, he waived the point.

**11. Criminal law ⬅1129(3)—Assignment of error complaining of verdict held insufficient.**

An assignment of error that the verdict is unauthorized by the evidence, contrary to law and evidence, and wholly without support of any evidence, and that the verdict should have been "not guilty," raises no question.

**12. Criminal law ⬅1004—Granting writ of error discretionary.**

A writ of error is not a writ of right, but whether or not it shall be allowed rests in the legal discretion of the judge to whom application is made; and where it is apparent to him, from an examination of the petition, assignments of error, and the record, that every question which the record would present to the appellate court has been decided adversely to petitioner on well-settled principles of law by courts having direct authority over the trial court, the writ should be refused.

Criminal prosecution by the United States against John T. Golden. On petition by defendant for writ of error and supersedeas. Denied.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn.

Lundeen & Lundeen, of Minneapolis, Minn., for defendant.

McGEE, District Judge. The information in this case charges the defendant with having made a sale of intoxicating liquor at a soft drink parlor operated by him at 529 Washingotn Avenue South in the city of Minneapolis, in the state and district of Minnesota, on the 14th day of March, 1923, and with having had intoxicating liquor in his possession on the 30th of March, 1923, at the same place, both in violation of the provisions of the National Prohibition Act (Comp. St. Ann. 1923, § 10138¼ et seq.).

The defendant interposed a plea of not guilty. The case was tried on October 23 and 24, 1923, and resulted in a verdict of guilty on both counts. Thereafter the defendant was sentenced to pay a fine of $500 on the possession count, and to serve 5 months and 25 days in the county jail of St. Louis county, Minn., on the conviction on the sale count.

A motion for a new trial was made and denied December 11, 1923.

A bill of exceptions has been allowed and settled.

The matter is now presented on a petition for the allowance of a writ of error and supersedeas. With the petition for a writ of

error there has been filed an assignment of errors.

[1] The errors assigned are 15 in number, and in their preparation Rule 11 of the Circuit Court of Appeals has been completely ignored, and on that ground alone a writ of error should be refused.

A list of the cases in which the Circuit Court of Appeals of the Eighth Circuit has taken the pains to explain the purpose and object of Rule 11, and has penalized litigants for the violation thereof, would occupy more than one page of the Federal Reporter. A few of the leading cases may be referred to: City of Lincoln v. Street-Light Co. (C. C. A. 8) 59 Fed. 756, 8 C. C. A. 253; Lincoln Savings Bank & Saving Deposit Co. v. Allen (C. C. A. 8) 82 Fed. 148, 27 C. C. A. 87; Sovereign Camp v. Jackson (C. C. A. 8) 97 Fed. 382, 384, 38 C. C. A. 208; Frame v. Portland Gold Mining Co. (C. C. A. 8) 108 Fed. 750, 47 C. C. A. 664; Webber v. Mihills (C. C. A. 8) 124 Fed. 64, 59 C. C. A. 578; Simpson v. First Natl. Bank (C. C. A. 8) 129 Fed. 257, 261, 63 C. C. A. 371; U. S. v. Ute Coal & Coke Co. (C. C. A. 8) 158 Fed. 20, 22, 85 C. C. A. 302; Thompkins v. M. K. & T. Ry. Co. (C. C. A. 8) 211 Fed. 391, 397, 128 C. C. A. 1, 52 L. R. A. (N. S.) 791.

In Frame v. Portland Gold Mining Co., supra, Judge Sanborn, speaking for the court, said: "Rule 11 of this court * * *. provides that 'the plaintiff in error or appellant shall file with the clerk of the court below, with his petition for the writ of error or appeal, an assignment of errors which shall set out separately and particularly each error asserted and intended to be urged. No writ of error or appeal shall be allowed until such assignment of errors shall have been filed.' This is a just and reasonable rule. It makes the filing of the assignment of errors before the writ is allowed indispensable to its issue, to the end that the judge to whom application is made for its allowance may be informed what the alleged errors are upon which the petitioner relies, and may thus intelligently decide whether or not the prayer of his petition should be granted, and also to the end that the opposing counsel and the appellate court may be informed what questions of law are raised for consideration."

In Simpson v. First National Bank, supra, in an opinion by Judge Sanborn, it is said: "In actions at law the assignment of errors must be filed and presented to the judge before the writ of error is issued or allowed, because he must determine, from an examination of it and of the petition for the writ, whether or not they set forth any substantial grounds for the issue of the writ."

In Sovereign Camp v. Jackson, supra, in an opinion by Judge Sanborn, it is said: "Did this assignment 'set out separately and particularly each error asserted and intended to be urged'? * * * Rule 11 is that each error asserted and intended to be urged shall be separately and particularly pointed out, not generally averred. None of the errors asserted in the argument, none of the questions of law or of fact there discussed, are pointed out in this assignment particularly or at all. * * * The assignment and the specification alike utterly fail to comply with the express terms of the rules. Nor are they more fortunate in serving the purpose to accomplish which these rules were made. Assignments and specifications of error were required for the purpose of informing the court and the counsel for the opposing party what questions would be presented for consideration and review in the appellate court. An assignment which fails to point out these questions—one which compels court and counsel to look further and to search the brief in order to discover them—entirely fails to accomplish the purpose of its being, and is utterly futile. The assignment and the specification in the case at bar are apt illustrations of such a failure."

Again in Thompkins v. M., K. & T. Ry. Co., supra, in an opinion by Judge Sanborn, it is said: "A federal appellate court is, in an action at law, a court for the correction of the errors of the court below only, and, unless it appears in the record before it that the lower court committed an error of law, it may not reverse its judgment. The legal presumption is that the rulings of the trial court were right, and the burden is on him who asserts that one of them was erroneous to make that fact appear by the record he presents to the appellate court."

In Walton v. Wild Goose Mining & Trading Co. (C. C. A. 9) 123 Fed. 209, 211, 60 C. C. A. 155, it is said: "The object of the rules is to so present the matter raised by the assignment of error that this court may understand what the question is it is called upon to decide without going beyond the assignment itself, and also that the party excepting may be confined to the objection taken at the time, which must then have been stated specifically. The party complaining of the action of the lower court must lay his finger upon the point of objection, and must

stand or fall upon the case he made in the court below. Appellate courts are not the proper forum to discuss new points. They are simply courts of review to determine whether the rulings of the court below, as presented, were correct or not."

The conclusions to be drawn from the cases cited are:

(1) That the rulings of the court below are presumed to be correct, and the burden is upon him who asserts the contrary to demonstrate it from the record he presents.

(2) The assignment of errors must set out separately and particularly each error asserted and intended to be urged, and where the error alleged relates to the admission or rejection of evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected. When this is not done, counsel will not be heard, and errors not assigned according to this rule will be disregarded.

(3) The matter raised by the assignment of errors must be so presented that the court may understand what the question it is called upon to decide is, without going beyond the assignment itself.

[2] It goes without saying that where the errors assigned are directed against the admission of testimony, the assignment, to conform to Rule 11, must quote the full substance of the evidence admitted, and show the exact objection interposed, ruling made, and exception taken.

The first assignment of error is typical of the eight succeeding ones, viz.: "The court erred in overruling defendant's objection to the question asked witness Albert H. Tetzel when said witness was asked to state what the liquor in question was as follows, to wit, 'What was it?' in this, to wit, that it called for a conclusion on the part of the witness and no proper foundation was laid for the said question and the answer permitted thereto, to which ruling of the court the defendant by his counsel then and there and at that time duly excepted."

No attempt is made in this or in any of the first nine assignments of error to quote any part of the testimony admitted. In other words, to quote the answers made to the questions objected to, nor in any of the assignments of error is there any indication where such answers can be found. This course imposes upon the judge to whom the application for a writ of error is made, and, if granted, upon the appellate court, the burden of plowing through 119 pages of testimony to determine what foundation, if any,

1 F. (2d)—35

there is for each particular assignment of error.

In each case, so far as the quoted record shows, there was no answer to the question, in which case there could be no error; and in each instance, so far as the quoted portion of the record shows, the witness may have answered the question favorably to the defendant, in which case the defendant could not complain.

The presumption is that no error did occur, and the burden rests upon the defendant to affirmatively establish that error did intervene.

[3] Passing over the assignment of errors to the record itself, it is apparent that by the first nine assignments of error the defendant seeks to raise the question whether a proper foundation was laid for the testimony of prohibition agents Tetzel and Sunde to testify—

(1) Whether the liquor purchased by them was moonshine whisky;

(2) Whether it contained one-half of 1 per cent. or more of alcohol by volume. In other words, whether it was intoxicating.

(3) Whether it was fit for beverage purposes.

That the foundation laid in each case was ample appears from the undisputed testimony in the record.

It appeared from the testimony of the witness Tetzel that he had been a federal prohibition agent, acting as an "under cover" man, that is, as a man whose duty it was to purchase intoxicating liquor in order to procure evidence of violations of the National Prohibition Act, from October 17, 1922; that between the 17th of October, 1922, and the 14th day of March, 1923, in the discharge of his official duties and for the very purpose of ascertaining and determining what it was he was purchasing and whether it was intoxicating and fit for beverage purposes, that he drank moonshine whisky between 25 and 50 times, and tasted and smelled it several hundred times; that he did the same with reference to other kinds of intoxicating liquor than moonshine whisky, such as whisky, wine, champagne, beer, and alcohol, and was able on the 14th of March, 1923, to distinguish between alcohol, moonshine whisky, and other forms of intoxicating liquors; that on the night of March 14, 1923, he and another agent named Sunde went to the defendant's soft drink parlor in Minneapolis; that Sunde ordered two rounds of drinks; that he (Tetzel) drank the glass of liquor served with the first round of drinks, and

merely tasted the second one; that they were served over the bar in small whisky glasses from a metal container by the defendant personally, who collected 30 cents per drink therefor; that he knew from his experience what the substance served was; that it was white moonshine whisky fit for beverage purposes, and contained more than one-half of 1 per cent. of alcohol by volume.

Oliver T. Sunde, a prohibition agent, testified that during his period of service as an "under cover" prohibition agent, which was continuous from the 19th of January, 1923, to the 14th of March, 1923, in the discharge of his duties and for the very purpose of determining the character of liquor he came in contact with in each instance, he drank moonshine whisky approximately 131 times; and for ten years prior to January 19, 1923, he had considerable experience as sheriff of Renville county, Minn., in detecting violations of the liquor laws of the state of Minnesota; that he, as such agent during the period mentioned, in addition to his experience in connection with the purchase of moonshine whisky, above stated, had drunk other forms of whisky, alcohol, wine, home brew, and on the 14th of March, 1923, he knew the taste and smell of moonshine whisky, and could distinguish it from alcohol and other intoxicants by tasting and smelling it, and on that day was capable of forming an opinion and was able to tell whether or not the liquor he drank was intoxicating, and whether or not it contained in excess of one-half of 1 per cent. of alcohol by volume; that the liquor purchased by himself and Tetzel from the defendant on the night of the 14th day of March, 1923, at the defendant's place of business, 529 Washington Avenue South, was moonshine whisky and contained more than one-half of 1 per cent. of alcohol by volume.

[4] The questions raised by the objections interposed went, not to the weight, but to the competency, of the testimony of the two witnesses mentioned. Whether a sufficient foundation was in fact laid was a preliminary question to be decided by the trial judge, and his determination of that question is conclusive unless the ruling made is manifestly and palpably erroneous. Spring Co. v. Edgar, 99 U. S. 645, 658, 25 L. Ed. 487; Stillwell Co. v. Phelps, 130 U. S. 520, 527, 9 Sup. Ct. 601, 32 L. Ed. 1035; Montana Ry. Co. v. Warren, 137 U. S. 348, 353, 11 Sup. Ct. 96, 34 L. Ed. 681; Inland Co. v. Tolson, 139 U. S. 551, 559, 11 Sup. Ct. 653, 35 L. Ed. 270.

In Spring Co. v. Edgar, supra, at page 658, it is said: "Whether a witness is shown to be qualified or not as an expert is a preliminary question to be determined in the first place by the court; and the rule is, that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony. Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous. D. & C. Steam Towboat Co. v. Starrs, 69 Pa. St. 30; Page v. Parker, 40 N. H. 48; Tucker v. Massachusetts Central Railroad, 118 Mass. 546."

In Stillwell Co. v. Phelps, supra, it is said: "Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial; and his decision of it is conclusive, unless clearly shown to be erroneous in matter of law. Perkins v. Stickney, 132 Mass. 217, and cases cited; Sorg v. First German Congregation, 63 Penn. St. 156."

In Montana Ry. Co. v. Warren, supra, it is said: "It is difficult to lay down any exact rule in respect to the amount of knowledge a witness must possess; and the determination of this matter rests largely in the discretion of the trial judge. Stillwell Manufacturing Co. v. Phelps, 130 U. S. 520; Lawrence v. Boston, 119 Mass. 126; Chandler v. Jamaica Pond Aqueduct Corporation, 125 Mass. 544."

See, also, United States v. Fischer (D. C.) 245 Fed. 477.

The cases cited announce the rule recognized by all courts; and that being true, the first nine assignments of error are manifestly without merit.

It would seem to be mere commonplace to say that men with ordinary intelligence, and certainly men with the experience that the witnesses Tetzel and Sunde are shown by the undisputed evidence to have had, are competent to say whether a given specimen of liquor is or is not whisky.

In Wynehamer v. People, 13 N. Y. 378, referring to judges and courts, Judge Comstock said: "We must be allowed to know, what is known by all persons of common intelligence."

In Brown v. Piper, 91 U. S. 37, 42 (23 L. Ed. 200), it is said: "Courts will take notice of whatever is generally known within

the limits of their jurisdiction; and, if the judge's memory is at fault, he may refresh it by resorting to any means for that purpose which he may deem safe and proper. This extends to such matters of science as are involved in the cases brought before him. See 1 Greenleaf's Ev. 11; Gresley's Ev. 294; and Taylor's Ev. § 4."

See, also, U. S. v. Sanders (D. C.) 290 Fed. 428, and Hunter v. N. Y. O. & W. Ry. Co., 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246.

In Ruppert v. Caffey, 251 U. S. 264, 303, 40 Sup. Ct. 141, 64 L. Ed. 260, referring to ale and porter, Mr. Justice Brandeis, speaking for the court, said that every one knows they are intoxicating liquors.

In Hensberg v. U. S. (C. C. A. 8) 288 Fed. 370, 371, Judge Booth, speaking for the court, said: "At the time of the adoption of the Eighteenth Amendment, and at the time of the passage of the National Prohibition Act, whisky was a well-known article of commerce, and apparently is not entirely unknown to-day. The article needed no further description. The word whisky connotes intoxicating liquor."

If it be said that moonshine whisky is something different from rye, bourbon, or Scotch whisky, that may be admitted, but it is a well-known fact that moonshine whisky is green, raw whisky; and the other brands mentioned were moonshine whisky when in the process of manufacture they had gone no further than the first two steps, which are fermentation and distillation.

The succeeding steps necessary to the production of the standard brands of whisky are stated in much detail in U. S. v. 50 Barrels of Whisky (D. C.) 165 Fed. 966, 970–972, and Woolner & Co. v. Rennick (C. C.) 170 Fed. 662, 664.

[5] Moonshine whisky is whisky within the meaning of that word as used in the National Prohibition Act, tit. 2, § 1 (Comp. St. Ann. Supp. 1923, § 10138½), which provides: "The word, 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes."

[6] That whisky, and particularly moonshine whisky, is intoxicating, and, in a legal sense, is fit for beverage purposes, is a matter of common knowledge, of which judicial notice will be taken, and need not be alleged or proven.

It is said in Eagan v. State, 53 Ind. 162, 163: "That whisky will intoxicate, is as well known as that fire will burn, or water will drown."

In State v. Lewis, 86 Minn. 174, 176, 90 N. W. 318, the court said: "Courts and juries will take knowledge of the fact that whisky and brandy are intoxicating liquors. It needs no evidence to support a fact so well known."

In Singer v. U. S. (C. C. A. 3) 278 Fed. 415, 418, it is said: "The third, fourth, fifth, and sixth assignments bear on the proposition that the government's proof was not sufficient to establish that the liquors sold and transported were intoxicating liquors, within the meaning of the National Prohibition Act. We are of opinion that there was ample evidence to establish this fact. It is true there was no analysis of the liquors sold and transported, but this was unnecessary. Whisky is a well-known intoxicating liquor of high alcoholic content, and, when the word is used in an act of legislation or elsewhere, it has a very definite and specific meaning. In certain liquids, the presence of alcohol or other ingredient may be determinable only by a chemical analysis. Not so with whisky. Alcohol is its chief ingredient. It is defined by the United States Pharmacopœia to be: 'An alcoholic liquid obtained by the distillation of the mash of fermented grain, * * * with a specific gravity (designating it) corresponding approximately to an alcoholic strength of 44 to 50 per cent. by weight, or 50 to 58 per cent. by volume.'"

In the Singer Case a writ of certiorari was denied. Singer v. U. S., 258 U. S. 620, 42 Sup. Ct. 272, 66 L. Ed. 795.

The question as to whether it is necessary to allege or prove that whisky is intoxicating or is fit for beverage purposes is foreclosed in this jurisdiction. Ruppert v. Caffey, 251 U. S. 264, 303, 40 Sup. Ct. 141, 64 L. Ed. 260; Davis v. U. S. (C. C. A. 9) 274 Fed. 928; Strada v. U. S. (C. C. A. 9) 281 Fed. 143, 145; Massey v. U. S. (C. C. A. 8) 281 Fed. 293, 296; Albert v. U. S. (C. C. A. 6) 281 Fed. 511, 512; Hensberg v. U. S. (C. C. A. 8) 288 Fed. 370, 371; Robinson v. U. S. (C. C. A. 2) 290 Fed. 755, 759.

In Hensberg v. U. S., supra, Judge Booth, speaking for the court, said:

"The objections urged against the information are that it fails to allege that the act charged was 'prohibited and unlawful'; that

it fails to allege that the whisky contained one-half of 1 per cent. or more of alcohol which was fit for beverage purposes; that it fails to allege that the whisky was sold for beverage purposes. The first objection we think untenable. * * * The ·second objection cannot be sustained. National Prohibition Act, tit. 2, § 1, provides: 'The word "liquor" or the phrase "intoxicating liquor" shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of 1 per centum or more of alcohol by volume which are fit for use for beverage purposes. * * * '

"At the time of the adoption of the Eighteenth Amendment, and at the time of the passage of the National Prohibition Act, whisky was a well-known article of commerce, and apparently is not entirely unknown today. The article needed no further description. The word whisky connotes intoxicating liquor.

"For similar reason the third objection is without merit. Where it is alleged that 'whisky' was sold, its fitness for beverage purposes, at least in a legal sense, need not be alleged nor proved. Strada v. U. S. (C. C. A.) 281 Fed. 143; Davis v. U. S. (C. C. A.) 274 Fed. 928."

As stated, the first ·nine assignments of error urged are designed to present a single question for decision, and that is whether the witnesses Tetzel and Sunde were shown by the testimony to have been qualified by experience to testify to the identity and alcoholic content of the liquor purchased by them from the defendant and whether it was fit for beverage purposes.

[7] The witnesses having been shown competent to testify that the liquor was moonshine whisky, and having so testified, it follows that both court and jury were bound to know as a matter of common knowledge and information, under the authority of the cases cited, that the liquor being whisky did contain more than one-half of 1 per cent. of alcohol by volume and was intoxicating; and therefore the testimony of Tetzel and Sunde, if they were not shown to have been properly qualified to testify to the alcoholic content and intoxicating character of the liquor, was harmless and without prejudice to the rights of the defendant; and the assignments of error predicated upon the rulings admitting

such testimony clearly can have no foundation upon which to rest.

The tenth assignment of error is that: "The court erred in suggesting to the counsel for the government that he had neglected to establish the fact that the Minneapolis in question was in Minnesota, (to) the said suggestion by the court, the defendant by his counsel then and there and at that time duly excepted."

As usual, the assignment of error fails to quote the portion of the record referred to, and fails to indicate in what part of the bill of exceptions the matter referred to can be found.

[8] However, an examination of the record discloses that it appears on page 40 of the bill of exceptions, and shows that the district attorney, representing the government, had omitted to prove venue, and that his attention was called to the matter, and very properly so, by the court.

[9] The eleventh assignment of error is that: "The court erred in denying defendant's motion to strike out all the evidence pertaining to the 30th day of March, 1923, as being incompetent, irrelevant, and immaterial, the witness Claude E. Warfield having testified that the search warrant and the return made thereon and in evidence was correct and that he made the same, the said proceedings being based on the said search warrant and return which bore the date·of March 30, 1922, to (which) ruling by the court the defendant then and there and by ·his counsel at that time duly excepted."

This presents another instance in which the assignment of error fails to quote the testimony retained in the record against defendant's motion and exception; and also fails to disclose where in the record the matter referred to can be found.

Page 65 of the ₗbill of exceptions shows the motion, the ruling thereon, and the exception taken.

The fact appeared that through a clerical error the figure "2" instead of "3" was used in the officer's return to the search warrant, in indicating the year the raid was made, making it appear that it occurred on the 30th of March, 1922, instead of 1923.

The twelfth assignment of error raises the same question as the eleventh assignment. The point sought to be raised in each case is, to say the least, without merit and borders on the frivolous.

[10] The thirteenth assignment of error is that: "The court erred in denying defendant's motion to dismiss the first and second

count of the information and discharge the defendant on the ground that there was no evidence sufficient upon which to base a conviction, the said motion being made at the close of the government's case, to which ruling by the court, the defendant by his counsel then and there and at that time duly excepted."

By searching the record, it will be found that the proceeding referred to appears on pages 91 and 92 of the bill of exceptions, the succeeding pages of which show that the defendant, upon the denial of the motion, proceeded to put in his case, thereby waiving the point sought to be made.

The fourteenth assignment of error is that: "The court erred in denying defendant's motion to dismiss the first and second count of the information and discharge the defendant at the close of all the testimony on the ground that there was no information (possibly meaning evidence) upon which to base a conviction, to which ruling by the court the defendant by his counsel then and there and at that time duly excepted."

The evidence of the government witnesses Tetzel and Sunde, Warfield, Nelson, and Simons is direct and positive as to the guilt of the defendant; and is contradicted only by the unsupported testimony of the defendant.

[11] The fifteenth assignment of error is that: "The verdict of the jury was unauthorized by the evidence, was contrary to the law and the evidence and wholly without support of any evidence. The verdict which the jury should have rendered was 'not guilty.'"

This assignment of error merits no attention, as under repeated rulings of the Circuit Court of Appeals it raises no question that could be presented or argued in the appellate court if a writ of error were allowed.

It is difficult to believe that counsel could have had any serious purpose in mind in the preparation of the assignments of error considered herein, or could have seriously thought that they made a case that would warrant the allowance of a writ of error and supersedeas.

[12] The rule governing a case like the one under consideration is that a writ of error is not a writ of right; that whether it shall be allowed or not is in the discretion of the judge to whom application is made. Of course, this discretion is a legal one, and in its exercise the defendant should have the benefit of any substantial doubts arising upon the questions presented by the record. If, upon the errors complained of, there be any substantial doubt or room for fair debate, the defendant should not be denied the opportunity to have the deliberate judgment of the appellate court upon the rulings of the trial court, if those rulings have affected the judgment and sentence of the court, and in such case the proceedings under the sentence should be stayed. Mackin v. U. S. (C. C.) 23 Fed. 339.

But when a petition for a writ of error with assignments of error as required by Rule 11 of the Circuit Court of Appeals is presented with an application for the allowance of the writ, and it is apparent to the judge to whom the application is made, from an examination of the same and of the record, including the bill of exceptions, where a bill of exceptions has been settled and allowed, that every question which the record would present for the determination of the appellate court, if a writ were allowed, has been determined adversely to the petitioner by well-settled principles of law, and particularly by decisions of the Supreme Court of the United States, or the Circuit Court of Appeals of his circuit, then the judge in such a case not only has the right but it is his positive duty to refuse the writ. Sovereign Camp v. Jackson (C. C. A. 8) 97 Fed. 382; Frame v. Portland Gold Mining Co. (C. C. A. 8) 108 Fed. 750; Webber v. Mihills (C. C. A. 8) 124 Fed. 64; Simpson v. First National Bank (C. C. A. 8) 129 Fed. 257, 261.

Four years of experience has taught federal trial judges that only severe punishment will compel respect for the National Prohibition Act, and as a result of that experience very much more severe punishment is being administered in such cases now than heretofore. If writs of error were to be allowed as a matter of course, regardless of the merits of the questions sought to be raised, and however trivial and frivolous the assignments of error might appear to be, the calendars of the appellate courts would be submerged in circuits where the calendars are already badly congested, and that, too, without any serious thought on the part of plaintiffs in error that they would achieve success in the appellate court. If such were the rule, the proceeding would be resorted to mainly for the purpose of procuring delay pending the appeal, which in this circuit is probably not less than one year.

Eighty per cent. of the time of this court is taken up with the trial of criminal cases, when but a few years ago the situation was completely reversed. What is true in this

district is true throughout the entire country.

This condition, it would seem, should be met by the courts with such changes in their rules, practice, and procedure as will introduce the elements of speed and promptness in the handling and disposition of criminal business.

The situation was well stated recently by Mr. Justice McReynolds in Moore v. Dempsey, 261 U. S. 86, 93, 101, 43 Sup. Ct. 265, 267, 67 L. Ed. 543, in these words: "The delays incident to enforcement of our criminal laws have become a national scandal and give serious alarm to those who observe. * * * The recent execution of assassins in England within thirty days of the crime, affords a striking contrast."

I have felt it to be my duty in this and in a number of other similar cases, which have recently come before me, to scrutinize carefully the records presented in connection with the accompanying assignments of error for the purpose of determining whether they made a case for the allowance of a writ of error within the rule hereinbefore stated, and when I have reached the conclusion that they did not, I have refused the writ, believing in that case that there rested upon me a positive duty so to do.

There is, in my opinion, no authority whatever for the position taken and strongly urged in this case that a writ of error is a writ of right, and issues as a matter of course. United States v. McDonald (D. C.) 293 Fed. 433; United States v. Bok (D. C.) 293 Fed. 443.

I have considered the petition for the writ of error and assignments of error presented in this case very carefully, and have reached the conclusion that they do not make a case for a writ of error, and that if a writ were allowed the case would be affirmed in the appellate court as a matter of course; and having reached that conclusion, it follows that the writ of error should be refused and supersedeas denied.

It is so ordered.